**Felippa C. FIELDS, Plaintiff-Appellee,**

v.

**William F. BOLGER, Postmaster General, United States Postal Service, Defendant-Appellant.**

No. 82–5582.

United States Court of Appeals, Sixth Circuit.

Nov. 14, 1983.

Decided Jan. 6, 1984.

W. Hickman Ewing, Jr., U.S. Atty., R. Larry Brown, Asst. U.S. Atty., Memphis, Tenn., John C. Oldenburg (Lead) argued, Asst. Regional Labor Counsel, Memphis, Tenn., for defendant-appellant.

Eugene Douglass, argued, Gary L. Jewel, Memphis, Tenn., for plaintiff-appellee.

Before ENGEL and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Defendant William F. Bolger, Postmaster General, United States Postal Service, ap-

peals to this Court from a district court judgment after a bench trial in a Title VII sex discrimination case. Suit was brought in the district court against Bolger by Felippa Fields, the plaintiff, who claimed that she was the victim of discriminatory treatment because she was denied continuing light duty assignments by the Postal Service due to her pregnancy, and was placed on involuntary maternity leave, at a time when there was in force a Postal Service policy of assigning light duty to all disabled employees when light duty was available. The plaintiff initially sought administrative relief by filing an Equal Employment Opportunity complaint with the Postal Service on March 17, 1978. The Postal Service initially granted her request for back pay, but this position was reversed and the plaintiff's claim denied on August 29, 1979.

The district court held that the plaintiff had established a *prima facie* case of sex discrimination, and that the defendant had articulated a facially legitimate reason for the Postal Service's treatment of the plaintiff. The court concluded, however, that the defendant's articulated reason was in fact pretextual in this particular case, and therefore awarded the plaintiff full back pay and reasonable attorney's fees. We reverse for the reasons hereinafter set forth.

In November, 1977, the plaintiff was employed by the Postal Service as a mail handler. During that month plaintiff learned that she was pregnant. She obtained a letter from her physician attesting to that fact, and in accordance with Postal Service policy, requested a light duty assignment.[1]

---

1. In the Postal Service, "light duty" is a status in which an employee, injured or otherwise incapable of performing his or her usual duties, is placed in a job not requiring the same work capacity as before the injury or disability. During light duty, an employee's income level remains the same. The Postal Service is not required to give light duty assignments to those employees who request it. However, the Service does try to find such light duty.

An employee was entitled to apply for light duty regardless of how the disability occurred. At all times pertinent to this lawsuit, however,

the Postal Service employed an on-the-job/off-the-job disability distinction in its light duty policies. If an employee required light duty as a result of an on-the-job injury but no light duty assignment was available, the Postal Service would continue to look for an available light duty assignment for the employee, and would place that employee in an available light duty assignment without requiring daily reapplication for such assignment. By contrast, if the employee was injured or disabled for non-work related reasons, such as pregnancy, the Postal Service did not continue to look for

In January, 1978, Fields was given a light duty assignment in the Markup Room in the Post Office. After two weeks, the plaintiff was transferred to another light duty job in the Customer Service Department. In February, 1978, after submitting another request for light duty and another letter from her physician placing restrictions on her work capacity, plaintiff was again given a light duty assignment in the Markup Room in the Post Office.

Plaintiff remained assigned in the Markup Room until February 17, 1978, when she was informed that the Markup Room was being closed. On that day, plaintiff was told that there was no other light duty available, and since she was not capable of going on full duty, she should go home.

On March 13, 1978, plaintiff returned to work with a letter from her physician stating that she was capable of performing full duty. Her superintendent allowed the plaintiff to begin work, but after about two hours she was told to report to a personnel manager who informed her that he was not going to honor her physician's letter because she could not perform her lifting duties as a mail handler.[2] Thus, plaintiff was sent home and involuntarily placed on maternity leave status. The following day, March 14, 1978, Fields received a letter officially placing her on maternity leave. This notice was confirmed on March 23, 1978, by a letter from the District Director of Employee and Labor Relations.[3]

At the trial, the District Director testified that he sent a letter to Mrs. Fields' physician for clarification of the physician's letter stating that plaintiff could return to full duty. In a letter dated March 21, 1978, the physician responded with his earlier restrictions on plaintiff's lifting capacity, and suggested that plaintiff be placed on maternity leave. The District Director testified that he was concerned about putting plaintiff in a work environment that would be injurious to her. The plaintiff testified that her physician had written the letter authorizing her return to full duty status only after plaintiff gave the physician assurances to lift no weights that could be dangerous to herself or her child. The plaintiff also testified that she could lift from thirty-five (35) to forty (40) pounds while pregnant. The March 21 letter from her physician limited her lifting capacity to twenty (20) pounds, the same restriction he had placed on the plaintiff earlier.

No other attempt was made by the Postal Service to find plaintiff any light duty assignments. Rather than use any of her accumulated annual or sick leave, or daily applying for light duty with supporting documents, plaintiff remained on maternity leave without pay until after her child was born. She then returned to the Postal Service in Memphis, Tennessee, where she is presently employed.

On appeal, the Postal Service contends that until the passage of the pregnancy disability amendment to Title VII of the Civil Rights Act of 1964,[4] a cause of action

available light duty assignments, and the employee had to apply for light duty every day.

This on-the-job/off-the-job disability distinction was made out of monetary considerations, as the Postal Service was obliged to compensate employees injured on the job who could not otherwise be utilized at work. Such employees were not obligated to draw on their annual or sick leave, or in the absence of paid leave, to accept leave without pay. The Postal Service was not obliged to compensate employees with non-job related disabilities, and these employees were obligated to draw on their paid leave, or to accept leave without pay.

2. The job description for mail handler required that an employee be able to lift up to seventy (70) pounds single-handedly.

3. In response to the defendant not giving plaintiff light duty or allowing her to work full duty, plaintiff initially filed a contractual grievance, but such grievance was apparently abandoned when she filed the Equal Employment Opportunity complaint now the subject of this appeal.

4. As of April 29, 1979, Title VII was amended to provide, in relevant part that women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . .

Act of October 31, 1978, Pub.L. No. 95–555, § 1, 92 Stat. 2076, 42 U.S.C. § 2000e(k) [effec-

could not be stated under Title VII for discrimination on the basis of pregnancy. The Postal Service further contends that the plaintiff failed to establish a *prima facie* case of discrimination, and that even if a *prima facie* case was established, the Postal Service articulated a legitimate, nondiscriminatory reason for its actions which the District Court erroneously found to be pretextual.

■ Defendant's first contention, that no cause of action could be stated under Title VII for discrimination on the basis of pregnancy until after passage of the pregnancy disability amendment, need not detain this court for long. Although the Supreme Court in *Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), held that pregnancy related distinctions utilized in employment policies are not *per se* violations of Title VII, such holding does not prevent the plaintiff from showing disparate treatment " 'designed to effect an invidious discrimination' " to which Title VII does apply. 434 U.S. at 143–44, 98 S.Ct. at 352 (quoting *General Electric Co. v. Gilbert,* 429 U.S. 125, 136, 97 S.Ct. 401, 408, 50 L.Ed.2d 343 (1976)). We also note that the cases cited on appeal by defendant address employer policies with disparate impact, but that plaintiff's claim in this case involves disparate treatment of one employee. The defendant has cited no precedent shielding the discriminatory treatment alleged in this case from the proscriptions of Title VII.

Next, defendant argues that the plaintiff failed to establish a *prima facie* case of discrimination under Title VII. The district court held that the plaintiff did so establish a *prima facie* case of sex discrimination.

[W]hen the defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for plaintiff's rejec-

tion, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII.

... Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant.

*U.S. Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

In light of *Aikens,* this court may now proceed to its review of the ultimate issue in this case.

■ The "factual inquiry" in a Title VII case is 'whether the defendant intentionally discriminated against the plaintiff.' *Aikens,* 103 S.Ct. at 1482 (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). The rule in a Title VII action is that once the plaintiff has established a *prima facie* case of intentional discrimination, the defendant must, through admissible evidence, produce a legitimate, nondiscriminatory reason for the plaintiff's treatment. If the defendant satisfies this burden of production, the plaintiff must prove that the asserted reason is pretextual. *See Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95. This ultimate burden of the plaintiff may be met either if the plaintiff persuades the court that the employment decision more likely than not was motivated by a discriminatory reason, or if the plaintiff shows that the employer's proffered reason is not worthy of belief. *Aikens,* 103 S.Ct. at 1483 (Blackmun, J., concurring).

■ A district court's finding of intentional discrimination in Title VII cases is a factual determination reviewable only under the clearly erroneous standard. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). A factual finding is clearly erroneous when, although there is evidence to support it, the appellate

tive October 31, 1978, except as to certain benefit programs in effect on the enactment date, as to which effectiveness was delayed 180 days.]

Note that this amendment was intended to be prospective only in application. *See Schwabenbauer v. Board of Education of City School District of Olean,* 667 F.2d 305, 310 n. 7 (2d Cir.1981).

court is left with the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

We hold that the district court's finding of intentional discrimination and pretextual action is not supported by substantial evidence and is clearly erroneous. First, regarding the Postal Service's application of its light duty policy to the plaintiff, the district court disregarded the testimony of Postal Service employees that application of the policy was not based upon the plaintiff's sex or pregnancy, but was based upon the Postal Service's light duty policy in force at the time. By disregarding this testimony, the district court also disregarded its own finding of fact that the Postal Service's on-the-job/off-the-job light duty policy distinction was in force at all times relevant to this lawsuit.[5] There was no evidence that the policy was applied differently to the plaintiff than any other employee with a non-job related disability, and the record clearly shows that the other pregnant women were required to submit individual requests each day and physicians' statements to be considered for light duty during the period in question. Nothing in Title VII compels an employer to prefer for alternative employment an employee who, because of pregnancy, is unable to perform her full range of duties. *Cf. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

Second, regarding the plaintiff being placed on involuntary maternity leave, Postal Service employees testified that they placed plaintiff on involuntary maternity leave because of their concern for her health. The district court did not disregard this testimony as incredible, and indeed found the reason to be facially legitimate, but simply ignored the reason altogether. Plaintiff admits that she was the only employee placed on involuntary maternity leave. We find that the defendant's action was consistent with the advice of the plaintiff's own physician, who repeated his initial restrictions on the plaintiff's work capacity, and suggested she be placed on maternity leave. Furthermore, the plaintiff's testimony supports the defendant's actions, inasmuch as the plaintiff conceded that due to her pregnancy, she was unable to perform her prior level of duties safely, and that she had returned to work on March 13, 1978, only after assuring her physician that she would not lift potentially dangerous loads. Finally, plaintiff does not contend that she was prevented from applying for light duty after she was involuntarily placed on maternity leave, and there is no evidence in the record that she complied with the Postal Service's policy requiring her to apply for light duty every day.

Based on the unusual facts of this case, we feel that the record permits only one resolution of the factual issue, and that plaintiff's action should be dismissed. *Cf. Pullman-Standard v. Swint,* 456 U.S. at 292, 102 S.Ct. at 1791. Since the district court's ultimate determination that defendant discriminated on the basis of sex and pregnancy and acted pretextually is clearly erroneous, its judgment is REVERSED, and the case is REMANDED to the district court for dismissal of the complaint.

ENGEL, Circuit Judge, dissenting.

I agree with the majority here that the issues in this sex discrimination case are essentially factual and subject to the clearly erroneous rule. I disagree, however, that application of the rule compels reversal. In my opinion, the correspondence from Dr. Atherton, and the exchange of correspon-

---

**5.** The district court found that "[t]he defendant has failed ... to show the proffered explanation to be the real reason for its action." Although this court does not base its decision on such analysis, we note that the district court has placed an improper burden on the defendant in this case. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The plaintiff bears the burden to demonstrate that the proffered reasons were not the true reasons for the employment decision. *Id.* at 256, 101 S.Ct. at 1095; *Aikens,* 103 S.Ct. at 1483 (Blackmun, J., concurring).

dence between Dr. Wiener and the Postal Service occurring between February 10, 1978 and March 21, 1978, taken with the other testimony in the case, sufficiently supports the trial judge's finding of discrimination. The evidence also supports his conclusion that the proffered nondiscriminatory reasons for placing plaintiff on involuntary pregnancy leave were pretextual.

I would affirm.