815 F.2d 706
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carl V. THOMPSON, Plaintiff-Appellant,
v.
UNION CARBIDE CORPORATION, Y-12 Plant, George Evans, C.C.
Roberts, George Cobham, B.B. Hopkins, C.N. Clark,
H.B. Hurt, Gino Zanolli, and Lola
Davidson, Defendants-Appellees.
 No. 86-5065.
 United States Court of Appeals, Sixth Circuit.
 March 18, 1987.
 
 Before KEITH and KENNEDY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 On March 29, 1984, appellant, Carl V. Thompson, brought this action for race discrimination and retaliation against appellee Union Carbide Corporation and other individual appellees pursuant to Title VII; 42 U.S.C. Sec. 2000e; 42 U.S.C. Secs. 1981, 1985 and 1986; and the fifth and thirteenth amendments to the United States Constitution. The case was tried on the theories of discrimination and retaliation before the Honorable James H. Jarvis. On October 18, 1985, the district court entered an order dismissing appellant's claims. For the reasons set forth below, we now affirm the district court.
 
 
 2
 Appellant is a black male and was employed by appellee Union Carbide Corporation at the Y-12 plant in Oak Ridge, Tennessee. He was terminated on May 31, 1983. His employment was as a security inspector. Appellant claims that from the first day of his employment, he was discriminated against in that he was denied promotions and transfers and was subjected to harassment and unwarranted disciplinary action, obscene language and racial epithets, and unwarranted and discriminatory medical and psychological evaluation and scrutiny. Appellant also claims that a groundless criminal prosecution was instigated against him and that he was given unfavorable job assignments. He further claims that he was ultimately discharged as a result of an unlawful conspiracy involving racial discrimination and retaliation for asserting claims of discrimination and for filing a charge of discrimination with the EEOC.
 
 
 3
 The incident which led to appellant's discharge occurred on May 31, 1983. Appellant was assigned to guard duty at Portal 29 that morning. He called Headquarters at approximately 9:00 a.m. to be temporarily relieved. The call was referred to Security Inspector Lola Davidson, who after jokingly telling appellant she would be there in an hour, proceeded to go directly to the post. Appellant then called Headquarters and complained that Davidson was harassing him. According to Davidson, the following occurred when she arrived at the post: Appellant, instead of going directly to the restroom, commenced voicing complaints, saying he was going to sue the Company because they had taken his weapon, and that the Company should take Union President John Davidson's weapon. Appellant asked Lola Davidson if she would testify for him in his pending case against Vanda Johnson.[1] Davidson told him she did not want to "hear it." Appellant went to the restroom. He returned and started saying the same things and Davidson told him again she did not want to hear it. Appellant put his hands on her neck and started choking her, saying "I'd like to kill you" or words to that effect. Davidson broke loose. She told him, "You're crazy," and left.
 
 
 4
 Ms. Davidson left Portal 29 and went directly to her next assignment, Portal 11. She called Union President John Davidson and reported the matter to him. He told her she should report it to C.C. Roberts, Chief of the Guard Department. As a result of appellant's call to Headquarters, Chief Roberts called Ms. Davidson at Portal 11 to tell her not to "harass" Thompson. Ms. Davidson then told Chief Roberts what had happened at Portal 29. Roberts told her to submit an officer's report, which Ms. Davidson prepared and left in his office. After receiving the report, Roberts notified his supervisors of the incident and Ms. Davidson was questioned. Department supervisors then conferred with Labor Relations representatives and concluded a further investigation was necessary and a meeting was arranged.
 
 
 5
 The Union president and chief steward were notified because of the nature of the allegations and the potential for disciplinary action. At the meeting, appellees Evans,[2] Hopkins[3] and Roberts were present, together with Labor Relations representatives and the Union president and chief steward (who was there on behalf of appellant). They heard Davidson alone, appellant alone, and Davidson and appellant together. Davidson repeated her version. Appellant ultimately denied that he had choked Davidson or that he had made the statements she said he had made. His responses were considered evasive. In the face of her repeated allegations he was observed not to look at her or answer her directly. Because of the tenor of his remarks and his demeanor as compared to Davidson's, Company officials believed Davidson. Upon reviewing the matter, they concluded that appellant should be terminated. The Union and appellant were so advised. Appellant was terminated on the grounds that he was unable to meet job requirements and because of misconduct on the job.
 
 
 6
 Appellant's discharge was the subject of a grievance under the Union agreement that ultimately came before Arbitrator Paul W. Hardy on March 22, 1984. The Union and appellant were represented by the Honorable Cecil D. Branstetter of Nashville. The issue presented was whether "Carl V. Thompson was terminated for just cause." The evidence presented included the testimony of Dr. Hurt and Mr. Clark[4] and evidence with respect to the incident of May 31. Arbitrator Hardy concluded that all of the evidence, on balance, "permits no decision other than a dismissal of the Union grievance as without merit."
 
 
 7
 On appeal, appellant initially contends that the district court erred in failing to follow the tripartite procedural analysis for examining employment discrimination claims as set forth in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Specifically, appellant argues that the district court failed to examine the "prima facie case" prong of the tripartite analysis on each of his multiple claims of discrimination and retaliation and thus denied him the benefit of the inference of discrimination which attends a prima facie case. We disagree.
 
 
 8
 The presumptions and burdens of proof in a Title VII case are well settled. The plaintiff has the initial burden of establishing a prima facie case. McDonnell Douglas, 411 U.S. at 802. The burden of establishing a prima facie case is not onerous. Burdine, 450 U.S. at 253. To do so the plaintiff must prove by a preponderance of the evidence that he belongs to a racial minority, he was qualified for the position which he was seeking (or from which he was terminated), and despite his qualifications he was rejected (or terminated) "under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253; accord McDonnell Douglas, 411 U.S. at 802.
 
 
 9
 The establishment of a prima facie case raises an inference of discrimination "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Burdine, 450 U.S. at 254; Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).
 
 
 10
 If the plaintiff successfully establishes a prima facie case, the burden is then upon the defendant to articulate a legitimate nondiscriminatory reason for its actions. Burdine, 450 U.S. at 253; McDonnell Douglas, 411 U.S. at 802. "The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine, 450 U.S. at 254.
 
 
 11
 "If the defendant carries the burden of production, the presumption raised by the prima facie case is rebutted and the factual inquiry proceeds to a new level of specificity." Burdine, 450 U.S. at 255. Plaintiff must thereafter establish that the proffered reason was not the true reason for the decision but was a pretext for discrimination. Id. at 256; McDonnell Douglas, 411 U.S. at 804. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Burdine, 450 U.S. at 253.
 
 
 12
 The Supreme Court has cautioned repeatedly that "[t]he prima facie case method established in McDonnell Douglas was 'never intended to be rigid, mechanized, or ritualistic. Rather it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' " U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) (quoting Furnco, 438 U.S. at 577)).
 
 
 13
 Appellant's contention that the district court erred by failing to find that he had established a prima facie case on each of his multiple claims is foreclosed by Aikens. In Aikens, as here, the defendants met plaintiff's evidence by going forward with evidence of legitimate reasons for its challenged actions. Expressing its surprise that the parties were still addressing the prima facie issue after a full trial on the merits, the Supreme Court held:
 
 
 14
 [W]hen the defendant fails to persuade the District Court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the McDonnell Burdine presumption "drops from the case" ... and "the factual inquiry proceeds to a new level of specificity." [Once the defendant met plaintiff's evidence with proof of its nondiscriminatory reason] ... [t]he district court was then in a position to decide the ultimate factual issue in the case.
 
 
 15
 Aikens, 460 U.S. at 714-715 (footnote omitted).
 
 
 16
 Further, so as to leave no doubt that the district court should not agonize over the prima facie case where the case is tried on the merits, the Supreme Court in Aikens said:
 
 
 17
 Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."
 
 
 18
 On the state of the record at the close of the evidence, the District Court in this case should have proceeded to this specific question directly, just as district courts decide disputed questions of fact in other civil litigation.... In short, the district court must decide which party's explanation of the employer's motivation it believes. Id. at 715-16. (Emphasis added).
 
 
 19
 Id. at 715-716 (emphasis added) (footnote and citation omitted).
 
 
 20
 Since Aikens, other courts have consistently held that once the defendant responds with proof of nondiscriminatory reasons for its actions, whether the plaintiff made out a prima facie case is no longer relevant and the district court should review the ultimate issue of discriminatory intent. Fields v. Bolger, 723 F.2d 1216, 1219 (6th Cir.1984).
 
 
 21
 In the instant case, the appellant claimed racial discrimination arising from a plethora of incidents from virtually the inception of his employment to his termination. The appellees responded to each of appellant's assertions, not by contending that appellant had failed to establish a prima facie case, but by offering evidence that appellant's allegations were untrue or that appellees had nondiscriminatory reasons for their actions. Thus, in light of the foregoing, and in accordance with the Supreme Court's direction in Aikens, the district court properly proceeded to determine the ultimate issue--whether appellant carried the burden of showing that appellees intentionally discriminated against him.
 
 
 22
 Appellant also claims that the district court erroneously analyzed his retaliation claims. The McDonnell Douglas burdens of persuasion and proof apply equally in retaliation cases. Kauffman v. Sidereal Corp., 695 F.2d 343 (9th Cir.1982); Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979 (1981). To establish a prima facie case of retaliation a plaintiff must show: (1) a statutorily protected participation; (2) an adverse employment action; and (3) a causal connection between the two. Dickerson v. Metropolitan Dade County, 659 F.2d 574, 580 (5th Cir.1981); Womack, 619 F.2d at 1296 (citing Hochstadt v. Worcester Foundation, 425 F.Supp. 318, 324 (D.Mass.), aff'd, 545 F.2d 222 (1st Cir.1976).
 
 
 23
 As with the discrimination claims, appellees responded to appellant's retaliation claims with evidence of the reasons for their actions. It thus was proper for the district court to bypass the prima facie issue and decide whether appellees intentionally retaliated against appellant. Aikens, 460 U.S. at 715. Thus, for the reasons stated above, the district court's approach of assuming, but not deciding, a prima facie case of retaliation was proper.
 
 
 24
 Appellant also contends that the district court erred in failing to consider his due process claim under the fifth amendment to the United States Constitution. We disagree.
 
 
 25
 It is established that matters not raised in the district court should not be considered on appeal. Olund v. Swarthout, 459 F.2d 999 (6th Cir.), cert. denied, 409 U.S. 1008 (1972); Wiper v. Great Lakes Engr. Works, 340 F.2d 727, 731 (6th Cir.), cert. denied, 382 U.S. 812 (1965). Where a matter is raised in a pleading but is not pressed at trial, the district court need not address it nor may it be raised on appeal. Libertyville Datsun Sales v. Nissan Motor Corp., 776 F.2d 735, 737 (7th Cir.1985); Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982), cert. denied, 461 U.S. 910 (1983); King v. Stevenson, 445 F.2d 565, 570-71 (7th Cir.1971). "[A] trial Judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings." Desert Palace, Inc. v. Salisbury, 401 F.2d 320, 324 (7th Cir.1968).
 
 
 26
 In this case the complaint stated that the action was authorized, in part, by the fifth amendment. It asserted that actions of appellees "imposed upon him a badge of slavery and violated his rights to due process of law secured by the Fifth ... Amendment." However, in the pre-trial order the action was described as "an employment discrimination action brought pursuant to 42 U.S.C. Sec. 2000e; ... and the ... Fifth and Thirteenth Amendment." Joint Appendix at 141 (Emphasis added). Nowhere in the pretrial order did appellant state or imply that due process was an issue. Also, appellant failed to assert a due process claim at trial and in his post-trial brief. Parties are bound by issues raised in their pre-trial order and may not introduce at trial or thereafter issues not raised in the order. McKinney v. Galvin, 701 F.2d 584 (6th Cir.1983). Appellant never presented the case on a due process theory. Thus, he cannot now argue that the district court erred in failing to consider the claim.[5]
 
 
 27
 Accordingly, for the reasons set forth herein, the judgment of the Honorable James H. Jarvis is AFFIRMED.[6]
 
 
 
 [1]
 In June of 1982, a female employee, Vanda Johnson, charged appellant with an assault upon her by automobile in the parking lot of Roane State College. Ms. Johnson took out a warrant for assault with the Oak Ridge Police. Appellant was bound over to the Anderson County Grand Jury which returned a not true bill. Appellant then filed a malicious prosecution action against Ms. Johnson in the Knox County Circuit Court. The verdict was rendered against appellant
 
 
 [2]
 George Evans is a division manager in charge of plant protection and security at the Y-12 plant
 
 
 [3]
 James B. Hopkins is the superintendent of the Y-12 plant protection department
 
 
 [4]
 On April 21, 1983, appellant reported at 7:30 a.m. to the Y-12 Medical Department stating that he had struck his head on some pipes extending from a construction truck. He requested to be sent off work. Appellant was examined by Physician Associate C.H. Clark. Upon examination, Clark found no abnormality or trauma and advised appellant that he could find no reason to send him off work. Appellant stated that if he was not sent home, he would not be responsible for his actions. After appellant repeated this remark, Clark sent him off work and directed that appellant report to Dr. Hunt, a psychologist, for evaluation. It was decided that appellant would not be permitted to wear a weapon pending the outcome of his evaluation. Dr. Hurt met with appellant on April 25, May 2 and May 9. From their first meeting, Dr. Hurt noted "the distinct possibility of a very manipulative personality structure, somewhat on the sociopathic side." From subsequent meetings, Dr. Hurt found that appellant was "angry, frustrated (and) exhibited ... resentment towards the Company and everything it stands for." Dr. Hurt scheduled additional meetings, but appellant failed to attend. Dr. Hurt concluded that appellant not be allowed to continue his employment as an armed security investigator
 
 
 [5]
 We also note that even if appellant's due process claim were properly before this Court, he was afforded prior notice and a meaningful opportunity to be heard. Prior to his discharge, appellant was notified of the charge against him. His union president and chief steward were also notified and appellant conferred privately with them prior to presenting his side of the incident. Company officials met with Davidson alone, appellant alone and with them together. Following the meetings, appellant was terminated, but the review did not stop there. It was considered at grievance hearings and at arbitration, where appellant was represented by experienced counsel. At all of these hearings, appellant and his Union had the opportunity to present any relevant evidence or argument
 
 
 [6]
 Appellant makes three additional arguments which we find without merit. Appellant argues that the district court failed to make findings of fact and conclusions of law concerning the fifth amendment claim pursuant to Fed.R.Civ.P. 52(a). In light of our discussion of the fifth amendment claim, we find this argument totally erroneous. Appellant further argues that the court's findings of fact concerning the "choking" incident were clearly erroneous. We conclude, however, that the district court's findings were based on the evidence and were not clearly erroneous
 Appellant also argues that the district court improperly considered as evidence the arbitration decision and the record before the arbitrator. We find, however, that the court did not commit error because "the arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." Alexander v. Gardner-Denver Co., 415 U.S. 36, 60, n. 21 (1974).
 Appellant finally argues that the district court erred in dismissing his defamation claims. We do not agree. Any claim for slander was barred by the six-month statute of limitation period of Tenn. Code Ann. Sec. 28-3-103 (1980); also, the district court was correct in stating that "plaintiff has not pointed to any document which is allegedly libelous." Thus, appellant has no valid claim.