**Melinda MALONE Plaintiff,**

v.

**USA TODAY, Defendant.**

No. CIV.03–74310.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 15, 2004.

868

Scott E. Combs, Novi, MI, for Plaintiff.

Robert M. Vercruysse, Jesse Goldstein, Vercruysse, Murray, Bingham Farms, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff brings a "sex / pregnancy discrimination" claim in diversity against Defendant, her former employer, under Michigan's Elliot–Larsen Civil Rights Act (M.C.L.A. § 37.2101 et. seq.).[1] Defendant

1. Defendant removed this case, pursuant to     28 U.S.C. § 1441, to this Federal Court on the

moves for summary judgment. For the reasons below, I GRANT Defendant's Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

In July 1993, Defendant, USA Today, hired Plaintiff, Melinda Malone ("Malone"), as a District Sales Manager. (Pl.'s Compl. ¶ 6.) In 1995, Plaintiff was promoted to Zone Manager, and in 1997 USA Today promoted Plaintiff to Circulation Manager. (Br. in Supp. of Summ. J. at 1.) According to Defendant, after Plaintiff became a Circulation Manager problems began to arise regarding Plaintiff's ability to properly supervise employees now reporting to her. Id. at 1.

On June 25, 2002, Plaintiff informed Defendant of her pregnancy. (Pl.'s Resp. at Ex. T.) In July 2002, USA Today implemented a plan to eliminate its office in Columbus, Ohio, and combine the oversight of its Detroit, Michigan and its Cleveland, Ohio operations at the Detroit office where Plaintiff was employed. (Br. in Supp. of Summ. J. at 3.) Plaintiff took a maternity leave from August 13, 2002, through September 9, 2002. (Pl.'s Resp. at Ex. T; Pl.'s Compl. ¶ 6.) Plaintiff claims that when she returned to work, Defendant informed her that Defendant was changing her assignments. (Pl.'s Compl. ¶ 8.) Defendant claims that Plaintiff had more responsibility after her return from maternity leave including supervising more people. (Br. in Supp. of Summ. J. at 3.) Defendant also claims that when Plaintiff returned to work her job performance deteriorated. Id. at 4. Plaintiff's direct supervisor, Jerry Johnson ("Johnson"), and Darrell Brotherton ("Brotherton"), the General Manager of the Detroit Office,

individually notified Plaintiff that she was not meeting expectations. Id. at 5.

In January 2003, Plaintiff expressed an interest in applying for a position as Circulation Director, a position which had become vacant because Johnson transferred to a different position in Chicago. Id. at 6. On January 17, 2003, Plaintiff met with Brotherton to talk about the Circulation Director position. Id. at 6. Brotherton said Plaintiff did not have the type of "leadership skills" that the position required. Id. at Ex. 11, at 12. Plaintiff alleges that, at that meeting, Brotherton asked Plaintiff to consider resigning. Id. at Ex. 6 at 46–52, 70.

Laura Weaver ("Weaver"), the controller in the Detroit office, was promoted to the open Circulation Director position and became Plaintiff's direct supervisor. Id. at 7. Weaver notified Plaintiff that Plaintiff was not meeting Weaver's expectations. Id. at Ex. 20, at 1. Weaver then met with Plaintiff in a series of one-on-one meetings to help Plaintiff improve her job performance. Id. at 7. Nevertheless, Plaintiff's job performance allegedly did not improve. Id. at 8. Weaver provided a final warning to Plaintiff that Plaintiff's work performance was unsatisfactory. Id. at Ex. 21, at 1. On July 14, 2003, Defendant terminated Plaintiff's employment with USA Today. (Pl.'s Compl. ¶ 6.) Weaver claimed that Plaintiff was fired because of Plaintiff's "poor performance in failures to coach, develop, manage and train." (Br. in Supp. of Summ. J. Ex. 18 at 25.)

On August 28, 2003, Plaintiff filed a complaint. (Pl.'s Compl.) Plaintiff alleges that Defendant committed a variety of Elliot–Larsen violations. Specifically, Plaintiff claims that based on Plaintiff's "sex/

basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. (Notice of Removal at 1.) Plaintiff is a resident of Oakland County, Michigan. (Pl.'s Compl. ¶ 2.) Defendant is incorporated under the laws of the State of Delaware and Defendant has its principal place of business in the State of Virginia. (Notice of Removal at 2.)

pregnancy" Defendant or Defendant's agents: demoted Plaintiff; disciplined her; altered her employment conditions; harassed Plaintiff; made "sexist statements" to Plaintiff; retaliated against Plaintiff; discharged Plaintiff; [and] replaced Plaintiff with a "non-pregnant male." (Pl.'s Compl. ¶ 12–17.) On September 10, 2004, Defendant moved for summary judgment on Plaintiff's claims. (Mot. for Summ. J.)

## II. ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any reasonable inferences drawn from the evidence in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), *Cash v. Hamilton County Dep't of Adult Probation*, 388 F.3d 539, 541 (6th Cir.2004).

The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). For a claim to survive a motion for summary judgment, the respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent,

the motion should be granted. The trial court has some discretion to determine whether the respondent's claim is plausible. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989).

### B. Michigan's Elliot–Larsen Civil Rights Act (M.C.L.A. § 37.2101 et. seq.)

▉ Plaintiff alleges a "sex / pregnancy discrimination" and retaliation claim under Michigan's Elliot–Larsen Civil Rights Act (M.C.L.A. § 37.2101 et. seq.) ("Elliot–Larsen"). (Pl.'s Compl. ¶¶ 1, 16.) Michigan's Elliot–Larsen Act prohibits sex discrimination in the workplace, and declares freedom from such discrimination to be a civil right. M.C.L.A. § 37.2102. Under Elliot–Larsen " 'Sex' includes, but is not limited to, pregnancy, childbirth, or a medical condition related to pregnancy or childbirth that des not include nontherapeutic abortion not intended to save the life of the mother." M.C.L.A. § 37.2201(d). A plaintiff bringing a claim under Elliot–Larsen must meet the same evidentiary burden as imposed under the Civil Rights Act of 1964 at 42 U.S.C. § 2000e et. seq. ("Title VII"). *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir.2000). As explained below, Plaintiff fails to meet this burden, and therefore, I GRANT Defendant's Motion for Summary Judgment in its favor with respect to these claims.

#### 1. Discrimination Claim

▉ A plaintiff, to establish a Title VII discrimination claim, must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Johnson v. Kroger Co.*, 319 F.3d 858, 864–865 (6th Cir.2003).

Direct evidence is the type of evidence that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Kroger Co.,* 319 F.3d at 865; citing *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999). Furthermore, "direct evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Kroger Co.,* 319 F.3d at 864; citing *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). Additionally, an unrelated decision maker's remark does not constitute direct evidence that unlawful discrimination was a determining or motivating factor in the employer's decision. *Wells v. New Cherokee Corp.,* 58 F.3d 233, 237–238 (6th Cir. 1995). If a plaintiff presents direct evidence of discriminatory intent in connection with a challenged employment action then the employer bears the burden of production and persuasion to prove that it would have terminated the employee "even if it had not been motivated by impermissible discrimination." *Johnson v. Kroger Co.,* 319 F.3d at 864–865; citing *Nguyen,* 229 F.3d at 563; *see also McDonnell Douglas Corp.,* 411 U.S. at 802–3, 93 S.Ct. 1817.

▮▮▮ A plaintiff who presents circumstantial evidence must establish a prima facie case of discrimination. *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 572 (6th Cir.2000). A plaintiff, to establish a prima facie case, must show that "(1) she was pregnant (2) she was qualified for her job, (3) she was subjected to an adverse employment action, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Cline v. Catholic*

*Diocese of Toledo,* 206 F.3d 651, 659 (6th Cir.2000); *see also Ensley–Gaines v. Runyon,* 100 F.3d 1220, 1224 (6th Cir.1996); citing *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. A plaintiff who establishes a prima facie case creates a rebuttable presumption of discrimination. *Kroger Co.,* 319 F.3d at 866; citing *Univ. of Cincinnati,* 215 F.3d at 572. A defendant then must show a "legitimate, nondiscriminatory reason" for committing the challenged action. *Id.* citing *Univ. of Cincinnati,* 215 F.3d at 573. If a defendant satisfies this burden, a plaintiff then must prove that a defendant's reason is actually a pretext to cover up unlawful discrimination. *Id.* citing *Univ. of Cincinnati,* 215 F.3d at 573.

Plaintiff presents a list of claims and does not distinguish whether she believes her claims are sufficient to state a prima facie case under the direct evidence prong or whether she intends for the claims to be sufficient to meet the circumstantial evidence prong. Therefore, I review her evidence under both standards.

### a. Direct Evidence of Discrimination

Plaintiff's case is based primarily on her own deposition testimony. Plaintiff cites extensive portions of her own testimony apparently to demonstrate direct evidence that USA Today discriminated against her on the basis of her pregnancy. However, Plaintiff is unable to demonstrate any direct evidence of pregnancy discrimination. Plaintiff cites her own deposition to show that Defendant said Plaintiff "could not equally and properly function in a management, supervisory position[,]" "because of [Plaintiff's] pregnancy and the fact that she was a female, with child [ . . . . ]" (Pl.'s Resp. at 6.) Plaintiff cites the following portion of her own deposition [2]:

---

2. Plaintiff also cites another portion of her own testimony to establish direct evidence of

discrimination. (Tr. Hr'g Nov. 18, 2004 at 12.) Plaintiff cites:

A. [ . . . ] Darryl Brotherton specifically said to me in a meeting between him and I that when him and his wife got married, they made choices so that when she was pregnant and had children, she wouldn't have to work. That my being a mom, being in circulation and having a child—he specifically said a baby, probably was not a good fit. He further went on to give examples of other employees in the Company that it worked for them, because they were in different departments. [ . . . ]

Q. [Brotherton] asked you to resign?

A. Yes, he did. He specifically said: Why don't you take some time, think about what kind of job you will be able to do or will make you happy, think about it. And if you want to give me say two months notice, I'll consider that—he said USA Today works out deals with people. How he would do it is if I gave him two months notice [to resign], I would still receive pay.

(Pl.'s Resp. at Ex. Y, at 47.)

■ Even assuming that Defendant's agent made this remark (the "January 17, 2003, Statement") to Plaintiff, the alleged statement does not constitute direct evidence of "sex / pregnancy" discrimination. Plaintiff fails, as a matter of law, to prove that Brotherton's remarks showed employer bias. To determine if an employer's comments amounted to direct evidence of discrimination the Supreme Court of Michigan inquires whether "[1] the comments were made by a decision maker or by an agent within the scope of his employment; [2] whether they were related to the decision making process; whether they were more than merely vague, ambiguous or isolated remarks; and [3] whether they were proximate in time to the act of termination." *Sniecinski v. Blue Cross and Blue Shield of Michigan*, 469 Mich. 124, 136, 666 N.W.2d 186 (Mich.2003) (finding that the employer's statements were not causally related to the employer's failure to hire the plaintiff claiming pregnancy discrimination); citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994) (formulating the standard for determining whether an employer's statement shows bias).

■ Brotherton's alleged remarks were vague, ambiguous, isolated and not "proximate in time to the act of termination." *Sniecinski*, 469 Mich. at 136, 666 N.W.2d 186. Brotherton's alleged remarks demonstrate no clear indication of bias. These statements appear to be part of a conversation between Brotherton and Plaintiff regarding time management based on Brotherton's personal experiences as both a father and a supervisor. This Court would have to inappropriately

---

Q. Is it clear to you that [Brotherton] had a perception that there were certain jobs there at USA that you could not do—

A. Absolutely.

Q. —if you were pregnant and had a child?

A. Absolutely.

Q. And did he specifically tell you that in January when comparing you to Lauri Steeland?

A. Yes, he told me circulation manager position [sic] would not work with my situation.

(Pl.'s Supplemental Resp. at 6; Pl.'s Resp. at Ex. Z, at 167.) In this portion of Plaintiff's deposition, Plaintiff is again referring to the January 17, 2003, Statement. The January 17, 2003, Statement is addressed in the main part of my opinion. Therefore, I do not address this statement separately.

Furthermore, Plaintiff's complaint and her allegations are based on her answers to questions put to her by her counsel in three depositions. While these depositions were taken at the request of Defendant's counsel, Plaintiff's counsel used them as an opportunity to introduce evidence through leading questions. These questions, except in a few instances, were not objected to by defense counsel, and thus I do not base my opinion on the use of leading questions.

draw unreasonable inferences to conclude that these statements demonstrate "that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Kroger Co.*, 319 F.3d at 864.

▮ Plaintiff's again offers the January 17, 2003, Statement apparently to demonstrate that Brotherton "specifically indicated that being pregnant and having a child did not fit with Plaintiff's job." (Tr. Hr'g Nov. 18, 2004 at 7.) "And he specifically asked her to resign, and wanted to force her into another position." *Id.* at 7. However, according to Plaintiff's own testimony, Brotherton did not demand that Plaintiff resign, rather Brotherton stated, "Why don't you take some time, think about what kind of job you will be able to do or will make you happy, think about it." (Pl.'s Resp. at Ex. Y, at 47.) In that sentence Plaintiff eviscerates her claim that Brotherton asked her to leave USA Today. This Court does not agree that Brotherton's statement equated to "ask[ing] her to resign." (Tr. Hr'g Nov. 18, 2004 at 7.) Furthermore, the January 17, 2003, Statement is insufficient to meet the direct evidence prong of a prima facie case, because direct evidence can not be based upon a foundation of unreasonable inferences and presumptions. *Kroger Co.*, 319 F.3d at 864.

The USA Today Employee Profile Termination of Melinda Malone ("Termination Notice") is a concise form document with only one handwritten sentence on it. (Pl.'s Resp. at Ex. W, at 1.) That sentence states that Malone is "[n]ot rehireable as a Circulation Manager due to inability to coach, develop, and manage staff." *Id.* at 1. Plaintiff presents the Termination Notice as direct evidence of discrimination. (Pl.'s Resp. at Ex. W, at 1; Tr. Hr'g Nov. 18, 2004 at 12.) Plaintiff's counsel falsely claims that Brotherton wrote on this Termination Notice that the " '[ . . . ] the circulation manager position would not work with [Malone's] situation . . .' that [situation] being pregnant and being on a pregnancy leave." (Tr. Hr'g Nov. 18, 2004 at 12.) Furthermore, Plaintiff's counsel falsely claims that in this Termination Notice, "[Brotherton] is specifically indicating these,[ . . . ] women can't do certain positions in certain levels, there's that glass ceiling." *Id.* at 13. I read this line plainly and refuse to instill this sentence with a meaning which is not present. Plaintiff's counsel uses this Termination Notice to reach conclusions that are not reasonable based on this plain understanding of the English language. This unreasonable inference does not establish a prima facie case because an unreasonable inference is not direct evidence. *Kroger Co.*, 319 F.3d at 864. However, even if the Termination Notice contained an incriminating statement, Plaintiff's counsel admits that Brotherton did not even draft the Termination Notice.[3] (Tr. Hr'g Nov. 18, 2004 at 35.)

Plaintiff's counsel again alleges that Brotherton made another statement that is sufficient direct evidence of discrimination. Plaintiff's counsel falsely claims that Plaintiff testified that Brotherton said "women and pregnant women can't hold this high of a level position." (Tr. Hr'g Nov. 18, 2004 at 17, 18.) However, this Court

---

**3.** Plaintiff's counsel's comment is in contrast to Plaintiff's counsel's earlier statement that "[Brotherton] put [the incriminating statement] down in writing when he issued the termination note, and this is found at Exhibit W." (Tr. Hr'g Nov. 18, 2004 at 12.) Plaintiff's counsel's comment also differs with Plaintiff's argument in the Brief in Opposition to Defen- dant's Motion for Summary Judgment stating that, "[ . . . ] Brotherton signed the termination paper, added his own comments about not being re-hirable in such a high level position, and based his decision to fire plaintiff on his own review of her performance." (Pl.'s Resp. at 11–12.)

asked Plaintiff's counsel seventeen times[4] to direct this Court to the specific page and line in Plaintiff's exhibits where Plaintiff testified that this statement was made.[5] *Id.* at 17. Plaintiff's counsel directed this Court to numerous passages from Plaintiff's deposition, however, none of those pages contained such testimony, or testimony from which it could be reasonably inferred that such a statement was made. (Tr. Hr'g Nov. 18, 2004 at 17–25.)

Furthermore, Plaintiff does not establish a course of conduct regarding Brotherton's discriminatory remarks; Brotherton's statements appear to be isolated comments. Plaintiff alleges that Brotherton also asked her whether or not she was coming back to work after her pregnancy and what her intentions were prior to going on maternity leave. (Pl.'s Resp. at Ex. Z, at 169.) This alleged remark also does not support an reasonable inference of pregnancy discrimination, rather, this remark appears to be a supervisor's justified interest in whether an employee will be taking time off. Even in the light most favorable to Plaintiff, this alleged statement, along with the alleged statements above do not demonstrate a course of conduct, rather they constitute only a few isolated statements.

Additionally, neither of these alleged statements are alleged to have occurred "proximate in time to the act of termination." Brotherton's alleged question about whether Plaintiff was coming back to work after her pregnancy occurred before Plaintiff even left for maternity leave, over a year before USA Today terminated Plaintiff. Brotherton's alleged statement to Plaintiff that a job in the circulation department would not be a "good fit" with a child, allegedly occurred on January 17, 2003, six months before USA Today terminated Plaintiff.[6] I believe a six month delay between an alleged statement and USA Today's termination of Plaintiff's employment can not be considered to be "proximate in time." Therefore, Brotherton's alleged remarks demonstrate no clear indication of bias.[7] Thus, Plaintiff

**4.** These questions appear in the Transcript of the Hearing that was held on November 18, 2004 at pages: 17 (once), 18 (twice), 19 (three times), 20 (twice), 21 (once), 22 (four times), 24 (twice), 25 (twice). (Tr. Hr'g Nov. 18, 2004 at 17–22, 24, 25.)

**5.** This Court repeated its question to Plaintiff's counsel at the Hearing on Defendant's Motion for Summary Judgment no less than seventeen times. (Tr. Hr'g Nov. 18, 2004 at 23.) This Court also asked the court reporter to repeat the statement to Plaintiff's counsel twice. (*Id.* at 21 & 23.) This Court also permitted Plaintiff to file a supplemental response to address this question. (*Id.* at 23.) However, Plaintiff's counsel never directed this Court with a specific page and line in Plaintiff's exhibits where Plaintiff testifies that Brotherton made this statement. Instead, Plaintiff's counsel provided three pages of Plaintiff's deposition testimony apparently to have the Court unreasonably infer from the testimony that Brotherton must have made the statement. (Pl.'s Supplemental Resp. at 4–6.)

Furthermore, Plaintiff in this Supplemental Response makes an additional unfounded accusation, falsely claiming that Brotherton "specifically stated that women, including plaintiff, had a 'glass ceiling' due to pregnancy for jobs with defendant USA, which they could not hold nor would they be considered for jobs above plaintiff's manager position." *Id.* at 6. However, Plaintiff also fails to provide any citation or evidence that this statement was made.

**6.** Plaintiff's counsel twice claims that there were only "[a]bout four and a half months[,]" in between the date that Brotherton made the alleged January 17, 2003, Statement and USA Today's termination of Plaintiff on July 14, 2003. (Pl.'s Resp. at Ex. W; Tr. Hr'g Nov. 18, 2004 at 16 & 33.) However, this Court assumes that Plaintiff's counsel's mistake is merely the result of confusion on his part.

**7.** Because I conclude that Brotherton's alleged comments do not demonstrate discriminatory bias, I do not address whether Brotherton was the sole decision maker who

may not proceed on a Elliot–Larson claim through the direct evidence prong, because she produces no direct evidence of USA Today's intent to discriminate.

### b. Circumstantial Evidence of Discrimination

■ Plaintiff does not present a prima facie case of discrimination. Therefore, Plaintiff must prove that her employer discriminated against her on the basis of a pregnancy to prove pregnancy discrimination. *Haynie v. State of Mich.*, 468 Mich. 302, 311, 664 N.W.2d 129 (Mich.2003). Defendant cites to Plaintiff's own deposition to demonstrate that Defendant did not discriminate against Plaintiff on the basis of her pregnancy and that Plaintiff suffered no discrimination while she was actually pregnant. (Br. in Supp. of Summ. J. at 16.)

Q. Okay. Am I correct in understanding that prior to your maternity leave, you don't feel that you were ever discriminated against?

A. Correct.

[. . .]

Q. All right. Ms. Malone, when did the discrimination begin?

A. Shortly before I left for maternity leave.

Q. Okay. Tell me what happened before you left, before your maternity leave that you felt was discriminatory.

A. The job responsibilities I had while pregnant were extremely manageable. While I was on maternity leave, they changed.

Q. Okay. But you just got through telling me that the discrimination began before you left to on maternity leave, and I asked what that was. So is there something that happened to you before you left to go on your maternity leave?

terminated Plaintiff's employment with USA

A. No specific comments were passed while—before I went on maternity leave regarding pregnancy, no.

Q. Okay. And the terms and conditions of your employment before you went on maternity leave were not discriminatory insofar as you were concerned; right?

A. No, my job responsibilities were not.

(Br. in Supp. of Summ. J. Ex. 6, at 17 and 20.) Plaintiff was no longer pregnant when the alleged discrimination began. Therefore, viewing the evidence in a light most favorable to Plaintiff, Plaintiff can not demonstrate the first prong of the prima facie case.

■ Furthermore, Plaintiff is unable to show that she was qualified for her job, and therefore, can not satisfy the second prong of the prima facie case or, even if she could, she would fail to show pretext. She can not show that she meets the second prong of the prima facie case. To determine whether an employee is qualified for a position a court must decide whether the employee has met the employer's legitimate expectations. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990) (stating that the employee must have met his employer's legitimate expectations at the time of the employee's dismissal). Plaintiff did not meet USA Today's expectations when USA Today dismissed Plaintiff.

Plaintiff had at one time been qualified for the position of Circulation Manager. (Br. in Supp. of Summ. J. Ex. 7 at 1.) Plaintiff claims that her employment record demonstrates that there was "no indication of poor performance" until her pregnancy. (Tr. Hr'g Nov. 18, 2004 at 29.) Plaintiff's counsel asserted at the Hearing on Defendant's Motion for Summary Judgment that:

Today.

[I]f you look at the time line that I set forth, right at the start of my brief, you'll see that there is nothing, nothing but praise and meeting expectations for this lady right until the time she's pregnant. [ . . . ] Now, there's no indication of poor performance before [the time Plaintiff became pregnant]. It's important to look at that.

(Tr. Hr'g Nov. 18, 2004 at 29.)

I agree that it is important to look at indications of prior poor performance, of which this case has many. Although Plaintiff met her employer's work expectations, prior to the consolidation of the Detroit and Cleveland offices, as early as February 11, 1998, USA Today's Performance Reviews of Melinda Malone exhibit criticisms of her "Team Building" skills and her "Emotional Withdrawals." [8] (Pl.'s Resp. at Ex. G, at 36.) However, USA Today's performance reviews of Plaintiff's work show that USA Today had criticized Plaintiff's performance beginning as early as August, 1998, nearly four years before Plaintiff informed USA Today that she was pregnant. (Pl.'s Resp. at Ex. G, at 36.) In August of 1998, a USA Today Performance Review of Plaintiff's work stated:

> After making some progress Melinda is again struggling with Team Building. Emotional withdrawals frequently cost her effectiveness. This has been a development area since January that must begin to show improvement immediately for her to be a successful Manager.

(Pl.'s Resp. at Ex. G, at 36.) Plaintiff recognized and agreed that there was a problem and wrote that "this review accurately reflects my accomplishments and areas that I need to improve." *Id.* at Ex. G, at 37.

USA Today continued to note problems with Plaintiff's work performance. On October 18, 2002, Plaintiff received another performance review where Plaintiff agreed with her employers that "her workload has not been doubled." *Id.* at Ex. G, at 3. Plaintiff agreed that she still needed to work on her team building and that her "behavior can directly influence others in the office which displays a negative atmosphere in the environment." *Id.* at Ex. G, at 3. Furthermore, Plaintiff agreed with Defendant's comment that:

> People feel she speaks before she thinks, is a team player when it pertains to herself, has a way of putting people down and sometimes presents things in an offensive manner. This area needs improvement. Melinda has acknowledged this is a developmental area on previous self-appraisals and we have discussed these issues in the past six months. I did see some improvement in this are [sic] prior to Melinda going out on maternity leave in June and look forward to more progress in the future.

*Id.* at Ex. G, at 2.

Plaintiff's evidence shows that over the course of nine months her performance deteriorated and that Defendant provided Plaintiff with no less than six more notifications of her failure to meet expectations before Defendant fired Plaintiff in July, 2003. (Br. in Supp. of Summ. J. Ex. 15, 16, 17, 19, 20, 21.) Therefore, Plaintiff fails to present evidence that USA Today terminated her "despite [her] qualifica-

---

**8.** Furthermore, Plaintiff's counsel stated that Defendant would have an "argument" to ask Plaintiff to resign if there was any prior history of Malone's poor performance. Plaintiff's counsel specifically said, "Now, if there as [sic] a history prior to the pregnancy of her being a mediocre employee, or being warned, or disciplined, or told she had to shape up or anything like that, then I can see the defendant's having some type of argument there." (Tr. Hr'g Nov. 18, 2004 at 32.)

877

tions," *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817 (1973).

■ Plaintiff is unable to establish the first and second prong of a prima facie case of pregnancy discrimination, and even if she could, she would fail to show pretext. Thus, I GRANT Defendant's Motion for Summary Judgment on Plaintiff's claim of pregnancy discrimination.

### 2. Retaliation Claim

■ A plaintiff, to establish a Title VII retaliation claim, must show: (1) that she was engaged in activity protected under Title VII; (2) that she was the subject of an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action. *Johnson v. U.S. Dep't of Health and Human Services*, 30 F.3d 45, 47 (6th Cir.1994). To establish the causation element Plaintiff must show that her participation in a protected activity was a "significant factor," contributing to her employer's adverse employment action. *Polk v. Yellow Freight System, Inc.*, 801 F.2d 190, 199 (6th Cir.1986).

■ In this case, Plaintiff alleges that USA Today terminated her employment, in retaliation for "Plaintiff's pregnancy." (Pl.'s Compl. ¶ 16.). This retaliation claim fails because Plaintiff does not elucidate that she engaged in a protected activity.

It is unlawful for an employer "to discriminate against any of his employees [ . . . ] for employment [ . . . ] because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title." 42 U.S.C. § 2000e–3(a). However, Plaintiff does not allege that she filed a complaint against her supervisor alleging discrimination or harassment on the basis of Plaintiff's pregnancy. Therefore, Plaintiff did not engage in a Title VII protected

activity, and hence fails to state a prima facie Elliot–Larsen retaliation claim. Thus, I GRANT Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim.

### III. CONCLUSION

Plaintiff offers no direct or indirect evidence of "sex / pregnancy" discrimination. Furthermore, Plaintiff is unable to demonstrate a prima facie case of discrimination or retaliation. Thus, I GRANT Defendant's Motion for Summary Judgment on Plaintiff's Elliott–Larsen Civil Rights Act claims because Plaintiff fails to state an Elliot–Larsen discrimination or retaliation claim.

**IT IS SO ORDERED.**