Markman, J.
We granted leave to appeal in this case to consider whether gender-based harassment that is not at all sexual in nature is sufficient to establish a claim of sexual harassment under the Civil Rights Act (cra), MCL 37.2101 et seq. The circuit court granted summary disposition in favor of defendants, concluding that plaintiff had failed to establish a prima facie case of hostile work environment based on sexual *304 harassment. The Court of Appeals reversed, concluding that gender-based harassment is sufficient to establish a claim of sexual harassment.[1] We disagree. The cra prohibits sexual harassment, which is defined in that act as “unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . .” MCL 37.2103(i). Accordingly, conduct or communication that is gender-based, but is not sexual in nature, does not constitute sexual harassment as that term is clearly defined in the CRA.[2] Therefore, we reverse the judgment of the Court of Appeals and reinstate the circuit court’s order granting summary disposition in favor of defendants.
I. FACTS AND PROCEDURAL HISTORY
Two capitol security officers with the Michigan State Police, Virginia Rich and Canute Findsen, shot and killed each other, while on duty. After the incident, plaintiff, the personal representative of the estate of decedent Rich, brought suit under the cra against the state of Michigan, the Michigan Department of State Police, and two state police supervisors. Plaintiff claimed that Findsen had sexually harassed Rich by making hostile and offensive comments about her gender, thus creating a hostile work *305 environment that caused Rich to complain to her supervisors, who failed to take remedial action.[3]
Defendants filed a motion for summary disposition under MCR 2.116(C)(7) and (8), arguing that the alleged conduct was not sexual in nature and, thus, not sufficient to establish a claim of sexual harassment. Although plaintiff conceded that the alleged offensive conduct was not sexual in nature, she argued that the conduct was gender-based and that allegations of gender-based harassment are also sufficient to establish a claim of sexual harassment. The circuit court granted defendants summary disposition, concluding that plaintiff had failed to plead three of the five necessary elements to establish a prima facie case of hostile work environment based on sexual harassment.[4] Specifically, it concluded that plaintiff had failed to plead that Rich was subjected to unwelcome sexual conduct or communication; that the unwelcome sexual conduct or communication was intended to, or, in fact, did, substantially interfere with Rich’s employment or create an intimidating, hostile, or offensive work environment; and respondeat superior.[5]
*306 The Court of Appeals reversed the circuit court’s order granting summary disposition for defendants. The Court relied on Koester v Novi, 458 Mich 1; 580 NW2d 835 (1998), which held that allegations of gender-based harassment can establish a claim of sexual harassment under the CRA. Defendants, the state of Michigan and the Michigan Department of State Police, applied for leave to appeal to this Court, which we granted.[6]
H. STANDARD OF REVIEW
“The decision to grant or deny summary disposition is a question of law that is reviewed de novo.” Veenstra v Washtenaw Country Club, 466 Mich 155, 159; 645 NW2d 643 (2002). Also reviewed de novo are questions of statutory interpretation, such as the question at issue here — whether harassment that is not sexual in nature, but is gender-based, is sufficient to establish a claim of sexual harassment under the cra. Id.
III. ANALYSIS
The cra, MCL 37.2202(1), provides in relevant part:
*307 An employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
Accordingly, it is unlawful for employers to discriminate against an individual with respect to a condition of employment because of sex. The cra, MCL 37.2103(i), further provides:
Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
(i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
(ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual’s employment, public accommodations or public services, education, or housing.
(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual’s employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.[7]
Plaintiff alleges that the conduct in this case violated subsection iii by creating a hostile work environment. To establish a prima facie case of hostile *308 work environment based on sexual harassment, plaintiff must show the following:
(1) the employee belonged to a protected group;
(2) the employee was subjected to communication or conduct on the basis of sex;
(3) the employee was subjected to unwelcome sexual conduct or communication;
(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee’s employment or created an intimidating, hostile, or offensive work environment; and
(5) respondeat superior. [Radtke v Everett, 442 Mich 368, 382-383; 501 NW2d 155 (1993); see also Chambers v Trettco, Inc, 463 Mich 297, 311; 614 NW2d 910 (2000).]
The first element is easily met because “all employees are inherently members of a protected class in hostile work environment cases because all persons may be discriminated against on the basis of sex.” Radtke, supra at 383. In this case, plaintiff meets the first element because Rich was an employee who was allegedly discriminated against on the basis of sex.
This Court concluded that, in order to meet the second element, a plaintiff need not show that the conduct at issue was sexual in nature; rather, a plaintiff need only show that “ ‘but for the fact of her sex, she would not have been the object of harassment.’ ” Id. (citation omitted). This second element is derived from the language of MCL 37.2202(1), which prohibits an employer from discriminating against an employee “because of” sex. Obviously, an employer cannot be said to have discriminated against an employee “because of” sex unless, but for the fact of the employee’s sex, the employer would not have discriminated against the employee. In this case, plaintiff *309 alleges that Findsen sexually harassed Rich by making hostile and offensive comments about her gender. Accordingly, plaintiff has sufficiently alleged that, but for the fact of Rich’s sex, she would not have been the object of harassment, and thus plaintiff meets the second element.
However, in order to recover for sexual harassment, plaintiff must not only show that the employee was discriminated against because of sex, she must also show that the employee was “subjected to unwelcome sexual conduct or communication.” Radtke, supra at 382. This third element is derived from MCL 37.2103(i), which provides that “[s]exual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . ...” In this case, plaintiff concedes that there were no “unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication of a sexual nature . . . .” Plaintiff argues, instead, that the communication was gender-based and that this type of communication can also constitute sexual harassment, pursuant to Koester.
In Koester, supra at 10, this Court, in a four-to-three decision, concluded that “harassment on the basis of a woman’s pregnancy is sexual harassment.” Again, the CRA, MCL 37.2202(1), prohibits employers from discriminating against individuals on the basis of sex with respect to a condition of employment. The CRA, MCL 37.2201(d), further provides that “ ‘[s]ex’ includes, but is not limited to, pregnancy . . . .” Accordingly, discrimination because of a woman’s pregnancy is a form of discrimination because of sex. However, it is obviously not the only type of discrimi *310 nation because of sex under the CRA. MCL 37.2103(f) also provides that “[discrimination because of sex includes sexual harassment.” Accordingly, sexual harassment is another type of discrimination because of sex.
Although Koester, supra at 11, correctly recognized that “discrimination on the basis of a woman’s pregnancy and sexual harassment are ‘two subsets of sex discrimination,’ ” it incorrectly concluded, in our judgment, that “harassment on the basis of a woman’s pregnancy is sexual harassment.” Id. at 10. Even assuming that harassment based on pregnancy may constitute discrimination based on pregnancy, and thus sex discrimination, harassment based on pregnancy that is not at all sexual in nature simply is not sexual harassment.[8] That is, although harassment based on pregnancy and sexual harassment may both constitute sex discrimination, they clearly do not both constitute sexual harassment.[9]
*311 Pregnancy discrimination is sex discrimination, but it is not sexual harassment. In order to prove pregnancy discrimination, one must show that the employer discriminated against the employee on the basis of a pregnancy. However, in order for one to prove sexual harassment, one must show that there was either “unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication of a sexual nature . . . .”[10] MCL 37.2103(f). Accordingly, pregnancy discrimination and sexual harassment consist of substantially different elements, and thus a person asserting a claim of sexual harassment must prove something considerably different from a person asserting a claim of pregnancy discrimination.
Further, although article two of the CRA, MCL 37.2201(d), defines “sex” to include pregnancy, the Supreme Court in Koester erred in applying this definition of “sex” to the definition of “sexual harassment” found in article one of the CRA, MCL 37.2103(i). Koester stated, “to say that comments of a ‘sexual nature’ do not include comments about a woman’s pregnancy ignores the specific definition of sex as contained in the act.” Koester, 458 Mich 10-11. However, the definition of “sex” found in article two, which includes pregnancy, is preceded by the lan *312 guage, “As used in this article . . . .” MCL 37.2201 (emphasis added). Therefore, this definition of “sex” is only applicable to article two. That is, although “sex” includes pregnancy for the purposes of article two, “sex” does not include pregnancy for the purposes of article one, the article at issue here. Accordingly, the Koester Court erred in applying article two’s definition of “sex” to the definition of “sexual harassment” found in article one.
To recapitulate, the CRA, MCL 37.2202(l)(a), prohibits employment discrimination because of sex. The cra, MCL 37.2201(d), defines “sex” to include pregnancy. Therefore, by concluding that harassment based on pregnancy is sexual harassment, the Koester Court also concluded that harassment based on gender is sexual harassment, even though such harassment is not at all of a sexual nature. However, the CRA, MCL 37.2103(i), defines “sexual harassment” as “unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . ...” It is clear from this definition of sexual harassment that only conduct or communication that is sexual in nature can constitute sexual harassment, and thus conduct or communication that is gender-based, but that is not sexual in nature, cannot constitute sexual harassment.[11] Accordingly, we overrule Koester to the extent that it *313 concludes that harassment based on gender that is not at all sexual in nature constitutes sexual harassment under the cra.[12]
The CRA, MCL 37.2103(i), clearly defines a hostile-work-environment claim based on sexual harassment as one involving “unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication of a sexual nature . ...” In this case, plaintiff concedes that there were no “unwelcome sexual advances, requests for sexual favors, [or] other verbal or physical conduct or communication of a sexual nature . . . .”[13] Accordingly, *314 plaintiff clearly has not established a claim of sexual harassment under the CRA.
*313 [U]nlike the general language of title VII, the CRA specifically defines “sexual harassment” as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature. The Legislature’s choice of language forecloses our reliance on title VII precedents to interpret sexual harassment under the cra. [213 Mich App 668-669.]
*314 IV. STARE DECISIS
Overruling precedent must, of course, be undertaken with caution and must only be done after careful consideration of the effect of stare decisis. That is, courts must consider “(a) whether the earlier decision was wrongly decided, and (b) whether overruling such decision would work an undue hardship because of reliance interests or expectations that have arisen.” Robertson v DaimlerChrysler Corp, 465 Mich 732, 757; 641 NW2d 567 (2002).
With regard to the first inquiry, we believe, as we have already observed, that Koester was wrongly decided. The CRA, MCL 37.2103(i), specifically defines “sexual harassment” as “unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . .” Therefore, the conclusion reached in Koester that gender-based harassment that is not at all sexual in nature can constitute sexual harassment is clearly wrong.
With regard to the second inquiry, we must examine “whether the previous decision has become so embedded, so accepted, so fundamental, to everyone’s expectations that to change it would produce
*315 not just readjustments, but practical real-world dislocations.” Robinson v Detroit, 462 Mich 439, 466; 613 NW2d 307 (2000). We conclude that the decision in Koester has not become “so embedded, so accepted, so fundamental” within our legal system that overruling it will interfere with any legitimate reliance or expectation interests. “[T]o have reliance, the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event.” Id. at 467. Overruling Koester will not disrupt any reliance interests as neither the plaintiffs decedent nor the defendants could conceivably have relied on our decision in Koester to their detriment. In no respect did any of them alter conduct in an attempt to conform such conduct to our decision in Koester. That is, assuming that the employer here did harass the plaintiffs decedent on the basis of gender, it certainly did not do so in reliance on our decision in Koester, which concluded that such conduct, in fact, constituted sexual harassment under the CRA. Nor could the plaintiffs decedent here have altered her conduct in any way in detrimental reliance on Koester.[14] Moreover, it is hard to envision how any employer or employee conceivably could have altered their conduct in any way in *316 detrimental reliance on Koester. Further, as this Court stated in Robinson, supra at 467:
[I]t is well to recall in discussing reliance, when dealing with an area of the law that is statutory . . . , that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to expect... that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest.[15]
Accordingly, our decision today, that gender-based harassment that is not sexual in nature does not constitute sexual harassment under the plain language of the cra, will not create any “practical real-world dislocations.”[16]
*317 For these reasons, we conclude that Koester was wrongly decided and that overruling it will not interfere with legitimate reliance or expectation interests. Accordingly, after considering the imperatives of stare decisis, we believe that it is appropriate to overrule Koester to the extent that it is inconsistent with our decision here today, and with the CRA, that harassment on the basis of gender that is not at all sexual in nature does not constitute sexual harassment.
V. RESPONSE TO THE DISSENT
First and foremost, the dissent seems to be confused about what this case is and is not about. This confusion has led the dissent to construe our opinion to mean something that it clearly does not mean. That is, the dissent repeatedly mischaracterizes our opinion as concluding that hostile-work-environment actions are limited to claims of a sexual nature. At no point in this opinion do we draw such a conclusion. Rather, the only conclusion that we reach is the unremarkable one that, because the CRA specifically defines sexual harassment as “conduct or communication of a sexual nature,” MCL 37.2103(i), in order to *318 establish a hostile-work-environment case based on sexual harassment, a plaintiff must show that the conduct complained of was sexual in nature. That is sexual harassment means sexual harassment. The dissent would construe sexual harassment to mean harassment of any kind.
The dissent argues that we should reach this conclusion because, since an employer cannot discriminate against an employee on the basis of gender, MCL 37.2202(l)(a), it necessarily follows that “an employer may not turn a blind eye to conduct that creates a hostile work atmosphere,” post at 328, on the basis of gender. However, we do not even address the substance of this argument because plaintiffs only allegation here is that the employee was sexually harassed and that this sexual harassment created a hostile work environment.[17] Therefore, the only issue before us is whether plaintiff has established a prima facie case of sexual harassment. Accordingly, there is no need for us to reach out and address whether the cra recognizes a claim for hostile work environment *319 based on anything other than sexual harassment.[18] See n 9.
Further, we disagree with the dissent’s assertion that this Court is somehow bound to interpret Michigan’s Civil Rights Act in accordance with the federal courts’ interpretation of the federal civil rights act. See n 11. Even if, as the dissent states, the Michigan Legislature relied heavily on the federal civil rights act in drafting Michigan’s Civil Rights Act, the Michigan Legislature was clearly not bound by the federal civil rights act. That is, the Michigan Legislature was *320 free to adopt a civil rights act that differed from the federal civil rights act, and although, as the dissent points out, there are many similarities between the two acts, the Michigan Legislature did, in fact, choose to adopt an act that is different from the federal act. Despite the dissent’s determination not to allow them to do so, the Michigan Legislature is allowed to determine for itself the extent to which it wishes to track the language of the federal law. In particular, Michigan’s Civil Rights Act is different from the federal civil rights act with regard to its treatment of sexual harassment. The dissent fails to respect this difference and, instead, concludes that because these acts are nearly identical they must be construed to mean exactly the same thing. We cannot agree that any time the Michigan Legislature creates a law that is “similar” to a federal law, it must be made identical, and the two laws must be interpreted to mean exactly the same thing.[19]
*321 Title VII of the federal civil rights act, like the Michigan Civil Rights Act, prohibits discrimination because of sex. However, unlike our civil rights act, title VII does not specifically prohibit and define “sexual harassment.” Our civil rights act specifically defines “sexual harassment” as “conduct or communication of a sexual nature . . . .” MCL 37.2103(f). Title VII, on the other hand, simply prohibits discrimination because of sex and the federal courts have construed this to include sexual harassment. Meritor Savings Bank, FSB v Vinson, 477 US 57, 66-67; 106 S Ct 2399; 91 L Ed 2d 49 (1986). That is, “federal case law has created a cause of action for sexual harassment under the general prohibition against gender discrimination,” Koester, 213 Mich App 668, while, the Michigan Legislature has specifically created a cause of action for both sex discrimination and sexual harassment.[20]
VI. CONCLUSION
The CRA prohibits sexual harassment, which is defined in that act as “unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . .” MCL 37.2103(f). Accordingly, conduct or communication that is gender-based, but is not sexual in *322 nature, does not constitute “sexual harassment” as that term is defined in the CRA. Therefore, in this case, where plaintiff concedes that the communication was not sexual in nature, but contends that it was gender-based, plaintiff has not set forth a claim of sexual harassment under the cra. For these reasons, we reverse the judgment of the Court of Appeals and reinstate the circuit court’s order granting summary disposition in favor of defendants.
Corrigan, C.J., and Taylor and Young, JJ., concurred with Markman, J.
Weaver, J.
I concur in the result and reasoning of the majority, except that I do not join in part v, “Response to the Dissent.”

 Unpublished opinion per curiam, issued September 28, 2001 (Docket No. 221535).

 The proper recourse for conduct or communication that is gender-based, but not sexual in nature, is a sex-discrimination claim, not a sexual-harassment claim.

 Although the harassment of Rich allegedly came primarily from Find-sen, who may have held the belief that females did not belong in law enforcement, he was not the only officer who allegedly harassed Rich.

 The circuit court also dismissed plaintiffs claims against the two state police supervisors, and the Court of Appeals affirmed that decision. In addition, plaintiff voluntarily accepted the dismissal of a weight-discrimination claim.

 As discussed below, the five necessary elements to establish a prima facie case of hostile work environment based on sexual harassment are:
(1) the employee belonged to a protected group;
(2) the employee was subjected to communication or conduct on the basis of sex;
*306 (3) the employee was subjected to unwelcome sexual conduct or communication;
(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee’s employment or created an intimidating, hostile, or offensive work environment; and
(5) respondeat superior. [Radtke v Everett, 442 Mich 368, 382-83; 501 NW2d 155 (1993); see also Chambers v Trettco, Inc, 463 Mich 297, 311; 614 NW2d 910 (2000).]
The circuit court concluded that plaintiff had failed to plead the last three elements.

 466 Mich 889 (2002).

 Subsections i and ii are commonly known as quid pro quo sexual harassment, and subsection iii is commonly known as hostile work environment sexual harassment.

 When we refer to harassment based on pregnancy and pregnancy discrimination in this opinion, we are referring to conduct or communication that is pregnancy-based and that is not sexual in nature. This sort of conduct or communication is not sexual harassment. However, contrary to the dissent’s contention, we do not foreclose the possibility that pregnancy-based comments may rise to the level of sexual harassment where they are also of a “sexual nature.”

 The Court of Appeals panel in Koester v Novi concluded that, even though evidence of harassment based on plaintiff’s pregnancy is not proof of sexual harassment, it may be proof of sex discrimination. 213 Mich App 653, 670 n 5; 540 NW2d 765 (1995). In the present case, we do not address whether harassment based on pregnancy may constitute sex discrimination because, even assuming that it does, that does not change the fact that harassment based on pregnancy is not sexual harassment, and thus, that the Supreme Court in Koester erred in holding otherwise. likewise, because the plaintiff in the present case only asserts a claim of sexual harassment, we do not address whether harassment based on sex may constitute sex discrimination.

 As Justice Weaver in her partial dissent in Koester explained:
While sexual harassment technically may be a “subset” of sexual discrimination, a claim for sexual harassment requires different proofs including proof of “unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature.” Thus, while sexual harassment is always a form of sex discrimination, all cases of sex discrimination do not necessarily amount to sexual harassment. [458 Mich 22-23.]

 The dissent misconstrues our opinion as concluding that “gender-based harassment ‘is not at all sexual in nature Post at 322. To the contrary, our conclusion is not that conduct cannot be both gender-based and sexual in nature, and thus that conduct that is gender-based can never constitute sexual harassment; rather, our conclusion is simply that “conduct or communication that is gender-based, but is not sexual in nature, does not constitute sexual harassment as that term is clearly defined in the cra.” See p 304. However, if conduct is gender-based and sexual in nature, it may well constitute sexual harassment.

 The Supreme Court in Koester erred in relying on a United States Supreme Court case that concluded that under title VII (now title 42) “[a] trier of fact may find sexual harassment when ‘the harasser is motivated by general hostility to the presence of women in the workplace.’ ” Koester, supra at 15, quoting Oncale v Sundowner Offshore Services, Inc, 523 US 75, 80; 118 S Ct 998; 140 L Ed 2d 201 (1998). The CRA specifically defines “sexual harassment,” while title VII does not. Therefore, while the United States Supreme Court may not be bound by any specific definition of “sexual harassment,” this Court is. As the Court of Appeals explained in Koester.

 The dissent states that “[p]laintiff alleged that decedent Rich . . . suffered . . . harassment of a ‘sexual’ nature,” post at 323, that plaintiffs hostile-work-environment action is “allegedly nonsexual,” id. at 326, and that “[pjlaintiff’s counsel did allege harassment of a sexual nature,” id. at 342. However, no allegations of harassment of a sexual nature can be found in plaintiffs complaint. Further, at the hearing on defendant’s motion for summary disposition, plaintiff’s counsel specifically stated that the alleged harassment was not sexual in nature. The dissent mistakenly looks to plaintiffs motion for reconsideration and its accompanying affidavits for support for its assertion that plaintiff alleged harassment of a sexual nature. The trial court denied plaintiff’s motion for reconsideration and the merits of that decision are not presently before this Court. Instead, what is before this Court is whether the trial court erred in granting sum *314 rnaiy disposition to defendants on plaintiff’s sexual-harassment claim. Only the pleadings may be considered when a motion for summary disposition is based, as this one was, on MCR 2.116(C)(8). MCR 2.116(G)(5). Therefore, there is absolutely no basis to look to plaintiff’s motion for reconsideration and its accompanying affidavits to determine whether the trial court erred in concluding that plaintiffs pleadings “failed to state a claim on which relief can be granted.” MCR 2.116(C)(8).

 Contrary to the dissent’s contention, we do not “ignore]] the effect on this particular plaintiff's decedent], and any plaintiff with a pending hostile-environment claim that is not specifically sexual in nature.” Post at 335. Rather, we have specifically considered and addressed this issue and, as explained above, have concluded that plaintiffs decedent could not have possibly changed her conduct in any way in reliance on our decision in Koester. Further, we are not deciding here that plaintiff is not entitled to any relief. Rather, we are simply deciding that plaintiff is not entitled to relief for the claim of hostile work environment based on sexual harassment.

 The dissent criticizes us for “ignor[ing] the instability that results from this Court’s weak adherence to the principle of stare decisis.” Post at 335. However, the dissent seems oblivious to the instability that results from courts of law failing to accord serious consideration to the clear words of the law. While the majority hi this case, at least, has sought to balance these respective instabilities, the dissent appears not to recognize the latter. Nor does the dissent appear to recognize that a recurrent source of disagreement between this majority and the dissent arises from the majority’s determination to give meaning to the clear words of the law. A principal rationale for doing this, of course, is to limit the extent to which this Court in the future must contribute to either of these potential sources of legal instability. To conclude, as the dissent does, that sexual harassment includes conduct or communication of a nonsexual nature, even though MCL 37.2103(f) clearly defines “sexual harassment” as “conduct or communication of a sexual nature,” would be, in our judgment, to disregard the words enacted by the Legislature and, not incidentally, create future instability in the law.

 During oral argument, plaintiff’s counsel, himself, admitted that an overruling of Koester will not cause any “practical real-world dislocations”:
*317 Justice Young-. Do you anticipate that employers, if Koester is trimmed in terms of its broad implication, or overturned, that employers generally are going to change their personnel policies to reflect an ability — change from what they’re doing now?
Mr. Boog-. No because I think most employers want their employees to be free of any type of harassment.
Justice Young-. I’m asking do you anticipate, given your experience, that they’ll change their policies.
Mr. Boog-. I would tell them to keep the same policies for the sake of employee morality [sic].
Further, employers will still have to consider the possibility of liability under the different language of title VH of the federal civil rights act.

 Contrary to the dissent’s contention, it is clear from plaintiffs complaint that she is seeking recovery on the basis of a sexual-harassment claim. Specifically, plaintiffs complaint states, “[t]his is an action primarily for offensive work environment-sexual and weight harassment . . . ”; “[t]hroughout the course of Decedent Rich’s employment, and including, but not limited to within three years of her death, Decedent Rich was sexually harassed . . . ”; and “[t]he conduct of Defendants, and the agents, employees and representatives of Defendants State of Michigan and Michigan Department of State Police in sexually harassing Decedent Rich . . . .” [Emphasis added.] In addition, as the dissent recognizes, during oral argument, when specifically asked if the only claim that was alleged was one based on sexual harassment, plaintiffs counsel answered in the affirmative.

 Contrary to the dissent’s overheated assertions, our opinion does not “oversimplif[y] the Civil Rights Act’s hostile-work-environment proscription,” “necessarily confine [] hostile-work-environment claims to those authorized by MCL 37.2103(i)(iii),” “severely constrict]] the scope of Michigan’s Civil Rights Act,” or “eviscerate[] Michigan’s hostile-work-environment jurisprudence” by “necessarily precluding the recognition of actions for hostile work environments based on religion, race, color, national origin, age, sex (inasmuch as the harassment is not overtly ‘sexual’), height, weight, or marital status under § 2202 of Michigan’s Civil Rights Act.” Post at 322, 326, 327. Instead, our opinion does not even address whether Michigan’s Civil Rights Act creates a hostile-work-environment action based on something other than sexual harassment because, as explained above, all that is before us today is a hostile-work-environment action that is based on sexual harassment. Plaintiff has not even attempted to bring a hostile-work-environment action based on anything other than sexual harassment. Contrary to the dissent’s assertion, we are not concluding that “victims of (hscrimination [may no longer] assert hostile-work-environment claims unless the activity at issue is ‘sexual’ in nature,” post at 334; instead, what we are concluding' here today is that a plaintiff may not assert a hostile-work-environment claim based on sexual harassment without showing that the complained of conduct was of a sexual nature.
The dissent further criticizes us for failing to recognize that in a hostile-work-environment action a plaintiff need not prove that she suffered a “tangible employment action” or an “economic loss.” Post at 329, 343. We are baffled by this criticism because nowhere in this opinion do we even suggest that a plaintiff in a hostile-work-environment action must prove that she suffered a tangible employment action or an economic loss. Instead, we simply conclude that, because it is uncontested that the conduct complained of here was not at all sexual in nature, plaintiff has not established a prima facie case of hostile work environment based on sexual harassment because the cra clearly defines sexual harassment as “conduct or communication of a sexual nature . . . .” MCL 37.2103(f).

 The dissent criticizes us for “depart[ing] from this sound tradition and, in doing so, mak[ing] sweeping changes to our employment-discrimination jurisprudence.” Post at 326. To say the least, it is no “sweeping change” to construe different laws in a different manner. Unlike the dissent, we refuse to ignore the Michigan Legislature’s express definition of “sexual harassment,” and, instead, to adopt the federal courts’ definition of “sexual harassment” pursuant to an altogether different law. This refusal is not based on a preference for one definition over the other, but on our recognition of our obligation to adhere to the clear language of the law.
The dissent characterizes our attempt to give effect to the Legislature’s express definition of “sexual harassment” as “a perfunctory textual analysis that misconstrues our Legislature’s intent.” Post at 327. It is unfortunate that the dissent feels this way because we do not know how the Legislature could have made its intent any more clear. The Legislature defined “sexual harassment” as “conduct or communication of a sexual nature . . . .” MCL 37.2103(f). In light of this clear definition, we are at a loss to know how the dissent can conclude with a straight face that the Legislature intended sexual harassment to include conduct or communication of a nonsexual nature. If, as the dissent seems to believe, sexual har *321 assment includes conduct or communication of a sexual and of a nonsexual nature, wouldn’t that mean that sexual harassment simply includes all conduct or communication? Unlike the dissent, we are comfortable in concluding that the Legislature intended what it said. Further, we do not find the Legislature’s intent that “sexual harassment” means harassment that is sexual in nature to be in the slightest bit surprising or unexpected.

 For these reasons, we agree with the analysis in the Court of Appeals decision in Koester, 213 Mich App 668-669, and in the partial dissent to this Court’s decision in Koester, 458 Mich 23-24, concluding that we should not rely on title VII precedents to interpret sexual harassment under the language of our very different civil rights act.