NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0314n.06
Filed: April 26, 2005

No. 03-2600

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBIN BELLAMY,

      Plaintiff-Appellant,

v.

FRED FRITZ, GENERAL MOTORS
CORPORATION, MESA SERVICES, INC., and
MESA RESOURCES, LLC,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

                                    /

Before:      MARTIN, COOK and LAY,[*] Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff-appellant Robin Bellamy appeals the district court's grant of summary judgment in favor of the defendants on her hostile work environment and retaliation claims brought pursuant to Title VII and Michigan's Elliott Larsen Civil Rights Act. For the following reasons, we AFFIRM the district court's judgment.

      The facts of the alleged incidents of harassment are adequately described in the district court's opinion. In brief, Bellamy is a former employee of Mesa Services, Inc., a contract house that supplied employees to the Big Three car manufacturers including General Motors. Bellamy alleges that one of her co-workers, Fred Fritz, sexually harassed her, created a hostile work environment,

---

[*]The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

and that she was subsequently discharged in retaliation for her allegations. Bellamy points to several contacts with Fritz which she claims entitled her to relief under Title VII and the Elliott Larsen Act.

## I.

We first address whether Bellamy's Title VII claim is time barred. The district court found that Bellamy's Title VII hostile work environment claim was not timely filed and we agree.

For federal courts to exercise jurisdiction over Title VII claims, the claimant must first present the claim to the EEOC or equivalent state entity. Michigan's Department of Civil Rights is a state entity with authority to grant or seek relief with respect to such claims, and therefore any claim filed with the Department of Civil Rights must be filed within three hundred days of the last act that contributed to the creation of a hostile work environment. 42 U.S.C. § 2000e-5(e)(1). A claim is not time barred if some of the allegations fall outside the three hundred day period — all that is necessary is that the action be filed within three hundred days of the last act that contributed to the creation of the alleged hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-19 (2002).

We conclude that the last allegedly sexually harassing incident occurred on April 3, 2001, when Fritz asked Bellamy whether she would be taking the same vacation day as her husband. While Bellamy refers to a subsequent incident — Fritz's presence at a June 12, 2001 training seminar — she admits that she had no contact with him and nothing harassing transpired. In *National R.R.*, the Supreme Court stated that "if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee can not recover for the

previous acts, at least not by reference to the day 401 act." *Nat'l R.R.*, 536 U.S. at 118. We believe that the June 12, 2001 incident "had no relation" to the prior alleged harassment, as Bellamy herself admits that nothing happened between her and Fritz on June 12. In fact, she admits to not even noticing that Fritz was at the same training.

Bellamy did not file her charges with the Michigan Department of Civil Rights until March 25, 2002, which was three hundred-fifty-six days after the April 3, 2001 incident. The Title VII hostile work environment claim was therefore not timely filed, and is procedurally barred.

## II.

With regard to Bellamy's claim under the Elliott Larsen Act, we review the district court's decision granting summary judgment *de novo*. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding an appeal from a grant of summary judgment, this Court reviews the evidence and draws reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Michigan Supreme Court has stated that a claim under the Elliott Larsen Act requires the plaintiff to demonstrate (1) membership in a protected group; (2) being subjected to communications or conduct on the basis of sex; (3) unwelcome sexual conduct or communication; (4) unwelcome sexual conduct or communication that was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work

environment; and (5) respondeat superior. *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000) (citing *Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993)).

"An objective reasonableness standard must be utilized to determine whether a hostile work environment exists under the Michigan Civil Rights Act" and "[a] hostile work environment claim is actionable only when, in the totality of the circumstances, the work environment is so tainted by harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or offensive work environment." *Radtke*, 501 N.W.2d at 169. Moreover, the Michigan Supreme Court has made clear that unlike Title VII, a claim under the Elliott Larsen Act for a sexually hostile work environment is not cognizable unless the harassment is sexual in nature. *Haynie v. Michigan*, 664 N.W.2d 129, 131 (Mich. 2003).

Furthermore, when the alleged harasser is not the claimant's supervisor, "[u]nder the Michigan Civil Rights Act, an employer may avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Radtke*, 501 N.W.2d at 168. "The bottom line is that, in cases involving a hostile work environment claim, a plaintiff must show some *fault* on the part of the employer. That is the essence of *Radtke*'s requirement that a plaintiff prove that the employer failed to take prompt and adequate remedial action upon notice of the creation of a hostile work environment." *Chambers*, 614 N.W.2d at 916 (internal citations and quotation marks omitted) (emphasis in original). Thus, an employer cannot

be held liable for conduct that occurred prior to the employer becoming aware of the problem. *See*

*id.*

We need not decide whether Fritz's actions constituted a hostile working environment, because we conclude that General Motors and Mesa took prompt and adequate remedial action upon learning of the alleged harassment. After the alleged phone call in April 2000, General Motors immediately set up a meeting with Fritz, counseled him, sent him to sexual harassment training, and instructed him to have no non-business related contacts with Bellamy. Bellamy admits that Fritz complied with these instructions and she had no further non-business related contacts with him. After Fritz wished Bellamy a "Happy Valentine's Day" and did his Elvis impression, General Motors relieved Fritz of his responsibility for collecting Bellamy's time sheets. After the final incident, when Fritz asked Bellamy if she was taking the same vacation day as her husband, General Motors and Mesa investigated her complaints, instructed Fritz to have no contact with Bellamy whatsoever, and relieved him of all administrative duties related to her time sheets and vacation schedule.[1]

---

[1]General Motors sent Bellamy a letter at the conclusion of its investigation apprising her of the results. It stated:

> General Motors has completed its investigation with regard to the various claims by you relative to Fred Fritz. As a result, Mr. Fritz has been permanently relieved of any responsibility for your timesheets and all other duties related to your contract assignment. He has also been instructed that he is to have no further contact with you in the workplace, and there appears to be no reason why he should have need for any contact. He has been counseled regarding harassment in the workplace. Should there be any further unwelcome contact between you and Mr. Fritz, I would encourage you to contact us immediately. If I am not available, you may speak to Barb Vettraino. I would emphasize that we take all allegations of harassment seriously, and we will take all steps necessary to ensure that our employees are

The record demonstrates that after each complaint, General Motors's Human Resources Department responded and took prompt remedial action. In *Chambers*, the Michigan Supreme Court held that the inquiry is "whether the action reasonably served to prevent future harassment of the plaintiff," 614 N.W.2d at 919, and this Court has held that "an appropriate corrective response will vary according to the frequency and severity of the alleged harassment," *Bell v. Chesapeake & Ohio Railway Co.*, 929 F.2d 220, 224 (6th Cir. 1991). Moreover, in *Blankenship v. Parke Care Centers, Inc.*, this Court stated that "[w]hen an employer responds with good-faith remedial action, we cannot say that the employer has itself committed an act of discrimination . . . . When an employer implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." 123 F.3d 868, 873 (6th Cir. 1997).

The actions taken here by General Motors and Mesa can hardly be characterized as exhibiting permissiveness and indifference sufficient to demonstrate *fault* under the standards set forth by the Michigan Supreme Court. Thus, we conclude that Bellamy has failed to make out a prima facie case of sex discrimination based on a sexually hostile work environment under Michigan's Elliott Larsen Act.

**III.**

Bellamy's final claim is that she was discharged in retaliation for engaging in protected activity in violation of Title VII and the Elliott Larsen Act. In 2000 and 2001, General Motors

---

working in a positive work environment . . . . If you have any questions or concerns regarding this matter, please do not hesitate to call.

reduced the number of employees and released numerous contract employees, including every contract employee that worked for North American Operations, which was housed in the same facility as Powertrain where Bellamy worked. Bellamy testified that while the North American Operations employees were being released, there was a general concern among those at Powertrain that they would be let go too.

After receiving the letter from General Motors's Human Resources Department in May 2001, Bellamy consulted a lawyer and made it known to her co-workers and supervisors that she intended to sue General Motors. It was not until November 29, 2001, however, that Bellamy's attorney sent a letter to General Motors asking to reopen their investigation into Fritz's conduct. That letter stated that the attorney had been retained "to investigate a possible sexual harassment/hostile work environment claim against General Motors Corporation" and that Bellamy found General Motors's remedial actions in response to her complaints to be insufficient. Bellamy stated at deposition that because of her attorney's letter, "I had been convinced, by myself and pretty much everyone I worked with, that because I had made it known I was suing, that GM wasn't going to fire [me], that [I'm] safe now." On January 14, 2002, however, a Mesa representative notified Bellamy that General Motors had terminated her contract employment. A General Motors salaried employee, Vic Huber, was transferred to Bellamy's former position. On the day that Bellamy was let go, four hundred other employees, both contract and General Motors employees, were also let go, including Fritz, who was transferred to another facility.

In *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999), this Court summarized the requirements for retaliation under both Title VII and the Elliott Larsen Act.

> To establish retaliation under Title VII, a plaintiff must show (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action and (3) that the adverse action occurred because of the protected activity. The Elliott-Larsen Act, M.C.L. § 37.2701(a), requires the plaintiff to demonstrate that (1) he opposed violations of the Act or participated in an activity protected by the Act and (2) his opposition or participation was a "significant factor" in the adverse employment action. The causal connection between the adverse employment action and the protected activity . . . may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint and by showing that he was treated differently from other employees.

(Internal citations omitted). At the time General Motors terminated Bellamy's contract employment, she had not yet filed a complaint of discrimination, though she had contacted a lawyer and made known to her co-workers and supervisors that she intended to sue, and her attorney eventually sent a letter to General Motors. Even assuming, without deciding, that Bellamy was engaged in a protected activity, Bellamy has failed to establish the necessary "causal connection" between that activity and her termination.

> In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action [or otherwise engaged in protected activity]. Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.

*Allen v. Mich. Dept. of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999) (internal citations omitted). Although the burden of establishing a prima facie case is not onerous, Bellamy has failed to meet it. Bellamy has not produced sufficient evidence to demonstrate a casual connection between any protected activity and her discharge, other than pointing to the timing of her declarations of intent to sue General Motors in May 2001, her lawyer's letter in November, and her discharge in January

2002. While she was discharged only six weeks after General Motors received her lawyer's letter, General Motors and Mesa point out that approximately four hundred workers were discharged and Mesa notes that Bellamy "was Mesa's only remaining employee at GM." Mesa Br. at 31. Moreover, Bellamy made her intentions to sue General Motors known as early as May 2001 and was not discharged until more than seven months later. General Motors defends its discharge of Bellamy by stating that it was merely a reduction in force, and notes that Bellamy has failed to show that any identically situated employees were not released as part of General Motors's force reduction.

We, like the district court, find Bellamy's arguments unpersuasive. The temporal connection between her complaints and her discharge does not raise an inference that her termination would not have occurred had she not complained, and she has failed to point to any identically situated employees who were treated differently. Thus, even if she was engaging in protected activity, she has not proffered sufficient evidence demonstrating the necessary causal connection between it and her termination and her case cannot survive a motion for summary judgment.

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendants.