*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADEELA GREEN,

　　　　　Plaintiff-Appellant,

v

LIEUTENANT JAMES CASHION, and CITY OF DETROIT,

　　　　　Defendants-Appellee.

UNPUBLISHED
October 29, 2020

No. 349945
Wayne Circuit Court
LC No. 18-004065-CD

Before: LETICA, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Plaintiff, Detroit City Police Officer Adeela Green, appeals as of right the trial court's order granting defendants', Lieutenant James Cashion and the City of Detroit, motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on plaintiff's claims alleging sex and race discrimination and sexual harassment under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. We affirm.

## I. BACKGROUND

Defendant Cashion, a white male, began working for the City of Detroit's (the city) police department in 1986, and was promoted to his current position in 2013. Plaintiff, an African-American female, began working for the department in 2008. At the times of the events at issue, Cashion was plaintiff's direct supervisor.

On April 16, 2016 at 12:50 a.m., plaintiff and her partner were dispatched on a run to Michigan Avenue and Vermont Street to address debris falling from an abandoned building that was creating a traffic hazard. Between 2:30 and 2:50 a.m., Cashion arrived at the scene and deployed barricades to block a parking lane on Michigan Avenue. According to his activity log, Cashion counseled plaintiff and her partner about taking an extended amount of time to block traffic when a better course of action could have been taken.

According to plaintiff, Cashion grabbed her arm and berated her. She broke loose from his grip, ran around to her police car, and sat inside. Cashion followed her to the police cruiser,

squatted down, grabbed plaintiff by her thigh and arm, and began violently shaking her as if he was trying to pull plaintiff out of her cruiser. Plaintiff also characterized the incident as Cashion touching her "inappropriately on my upper thigh and my vagina[.]" Plaintiff's police partner, who was sitting in the car at the time of the incident, also corroborated plaintiff's version of events.

Plaintiff alleged that she told her supervisor, two union stewards, and a captain about the assault. Plaintiff also filed a police report and reported the incident to the police department's Internal Affairs. The department's medical section referred plaintiff for psychological treatment. Plaintiff's treating psychologist initially stated plaintiff could return to full work duties as long as Cashion was not her supervisor. Plaintiff was eventually diagnosed with Post-Traumatic Stress Disorder (PTSD) related to the incident. Plaintiff went on and off disabled status for some time, but eventually returned to work as a dispatcher in the department's communications section.

The eventual 46-page Internal Affairs report regarding the incident concluded that plaintiff's assault allegation was unfounded. Multiple employees of the department were interviewed in order to produce the report, some of whom found it doubtful that Cashion assaulted plaintiff in the manner she described. The report recommended that plaintiff be disciplined for: (1) exhibiting insubordination and disrespect toward her ranking officer when she walked away from Cashion at the scene, telling him that she did not have to listen to him; and (2) failing to truthfully answer all questions while being interviewed by Internal Affairs.

Plaintiff was initially issued a five-day suspension, which was reduced to a written reprimand for insubordination. As a result of the same report, Cashion received a reprimand for failing to refer plaintiff's partner to the employee assistance program. In May 2017, Cashion's reprimand did not appear in his file.

In June 2016, plaintiff filed a charge of discrimination with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission, which was dismissed. In April 2018, plaintiff filed the instant lawsuit. Therein, plaintiff alleged that Cashion had historically been known for treating certain white and male police officers more favorably than African-American police officers, including plaintiff, on the basis of her sex and race. She also alleged that Cashion's actions constituted a violation of her rights protected under the ELCRA to be free from sexual harassment.

Defendants filed a motion for summary disposition. The trial court granted their motion and dismissed plaintiff's claims.

This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim and may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). In reviewing such a motion, a court considers the pleadings, affidavits, depositions, admissions, and documentary evidence in a light most favorable to the

nonmoving party. *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). "[C]ourts may not resolve factual disputes or determine credibility in ruling on a summary disposition motion." *White v Taylor Distrib Co*, 275 Mich App 615, 625; 739 NW2d 132 (2007).

## III. RACE AND SEX DISCRIMINATION

Plaintiff first argues that the trial court erred when it failed to credit her abundant evidence of race and sex discrimination. We disagree because plaintiff cannot demonstrate that she suffered an adverse employment action as required to sustain a claim under the ELCRA for unlawful employment discrimination.

The ELCRA prohibits an employer from discriminating against an individual on the basis of race or sex. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 606; 886 NW2d 135 (2016). In relevant part, MCL 37.2202(1)(a) provides that an employer may not:

> Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

In order to establish a claim under MCL 37.2202, "the plaintiff must establish that he or she suffered an adverse employment action." *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009). "There is no exhaustive list of what constitutes adverse employment actions." *Id*. "And what might constitute an adverse employment action in one employment context might not be actionable in another employment context"; therefore, whether an employee suffered an adverse employment action should be considered in the unique characteristics of the employee's status. *Id*. "Nevertheless, regardless of the employment context, in order to be actionable, an employment action must be materially adverse to the employee—that is, it must be more than a mere inconvenience or minor alteration of job responsibilities." *Id*. "In addition, there must be an objective basis for demonstrating that the employment action is adverse because a plaintiff's subjective impressions are not controlling." *Id*. at 201-202. "Materially adverse employment actions are akin to termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. at 202 (quotation marks omitted).

Plaintiff has failed to present any evidence that her suspension reduced to a written reprimand[1] was materially adverse. The crux of plaintiff's argument on appeal is that her

---

[1] While defendants asserted, and the trial court adopted, that the reprimand would be wiped from plaintiff's file after two years under the terms of the collective bargaining agreement, this agreement is not contained within the record. But plaintiff has never disputed that this reprimand would be only present in her file for a two-year period. Nevertheless, we conclude that the length of time is irrelevant to whether the reprimand was materially adverse at the time of this action.

reprimand could legally be considered an adverse employment action. Binding caselaw does not foreclose the possibility of an act like plaintiff's reprimand constituting an adverse employment action so long as such an action materially adversely impacted plaintiff's employment. *Chen*, 284 Mich App at 201-202.

And, in this case, there is no evidence that plaintiff's discipline altered the circumstances and conditions plaintiff's employment at all—let alone materially. See *id*. Viewing the evidence in the light most favorable to the plaintiff, the record reflects that plaintiff's job duties were altered due to plaintiff's continuing mental health problems as a result of Cashion's actions on April 16, 2016. Plaintiff was not able to continue her full job duties shortly after the incident and had restricted work capacity. The disciplinary actions taken against plaintiff as a result of the 2017 Internal Affairs report did not alter these circumstances. Plaintiff provided no evidence that the ultimate reprimand she received changed her job duties in any way. Plaintiff also provided no evidence that the reprimand resulted in her being overlooked for or denied a promotion or transfer, prevented her from going back to the job duties she had prior to the incident, decreased her wage or salary, or caused any other alteration in her employment that would not otherwise have occurred. *Id*. at 202. Additionally, plaintiff's subjective belief that the disciplinary process was flawed or discriminatory was insufficient to demonstrate that it was an adverse action, absent objective evidence demonstrating this. *Id*. at 201-202. Thus, even assuming a reprimand such as the one plaintiff received could constitute an adverse employment action, plaintiff provided no evidence that the reprimand here altered her employment with the city in any way, let alone materially.

Plaintiff's inability to demonstrate an adverse employment action forecloses relief under the ELCRA for unlawful discrimination on the basis of plaintiff's race or sex. *Id*. at 201. Therefore, we decline to consider the parties' remaining arguments regarding whether plaintiff provided direct or circumstantial evidence of unlawful discrimination.

## IV. SEXUAL HARASSMENT

Plaintiff argues that she presented sufficient evidence of a single, traumatic incident of sexual harassment, which satisfied the standard in *Radtke v Everett*, 442 Mich 368; 501 NW2d 155 (1993), in order to impose liability under ELCRA. While we agree plaintiff can establish a hostile work environment existed, she cannot establish respondeat superior liability.

Plaintiff alleges that Cashion's assault, and the city's reaction to it, constituted sexual harassment. The ELCRA provides that discrimination on the basis of sex includes sexual harassment and defines that term:

> Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i).]

Plaintiff specifically alleges that the conduct in this case violated subsection (*iii*), as the defendants created a hostile work environment. In order to establish a prima facie case of sexual harassment based on a hostile work environment, plaintiff must show:

(1) [T]he employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Haynie v State*, 468 Mich 302, 307-308; 664 NW2d 129 (2003) (citing *Radtke*, 442 Mich at 382-383).]

There is no dispute that plaintiff belongs to a protected group based on her race and sex. Moreover, viewing the evidence in the light most favorable to plaintiff without making any credibility determinations, we conclude that there are triable issues of fact as to whether plaintiff met the second, third, and fourth prongs.

As to the second prong, there is evidence that plaintiff was subjected to conduct on the basis of her sex. In particular, if Cashion touched the area around plaintiff's vagina, it could be sufficiently inferred that his contact occurred because of plaintiff's sex. See *Radtke*, 442 Mich at 384 (reasoning that the defendant's overtures were inferentially sexual in that case).

As to the third prong, plaintiff presented evidence that she was subjected to unwelcome sexual conduct when Cashion grabbed her vaginal area without her consent or invitation. *Radtke*, 442 Mich at 384-385 (stating that "the gravamen of a Michigan Civil Rights Act sexual harassment claim is that the alleged sexual advances were unwelcome," and that the plaintiff's allegation that the defendant physical restrained her against her will and forced her to kiss him was sufficient). Although there is evidence to the contrary, and plaintiff's version of events was at times inconsistent, there remains a genuine factual dispute about whether this incident occurred in the manner plaintiff described. Moreover, the area where Cashion grabbed plaintiff could raise an inference that his contact was sexual in nature.

As to the fourth prong, to demonstrate a hostile work environment plaintiff "must prove that (1) the employer failed to rectify a problem after adequate notice, and (2) a continuous or periodic problem existed or a repetition of an episode was likely to occur." *Radtke*, 442 Mich at 395. There is no such evidence here. While the Internal Affairs' report failed to discipline Cashion for this incident, and, therefore, the city arguably failed to rectify the problem, there was no evidence that a repetition was likely to occur. Plaintiff and her partner also reported to Internal Affairs that Cashion shook plaintiff on her arm and leg/thigh, and did not describe the incident as Cashion touching plaintiff's vaginal area or as sexual assault. Based on the recommendation from her treating psychologist, plaintiff was no longer directed to work with Cashion. Additionally, plaintiff provided no evidence that the city sanctioned any other similar misconduct from Cashion toward her or any other employee. Therefore, plaintiff cannot demonstrate a hostile work environment in this manner.

However, plaintiff is correct that she may use a single incident to demonstrate a hostile work environment if we determine that the evidence of Cashion's assault was extreme enough. The Supreme Court has held that "[a]lthough rare, single incidents may create a hostile environment—rape and violent sexual assault are two possible scenarios. One such extremely traumatic experience may, therefore, fulfill the statutory requirement." *Id*. The Court explained that, generally, "a single incident, unless extreme, will not create an offense hostile, or intimidating work environment[.]" *Id*. In this case, plaintiff described Cashion "violently" shaking plaintiff and grabbing the area around her vagina in the presence of her partner. There is evidence that plaintiff suffered from PTSD directly after the incident and that she still continues to experience some symptoms. A reasonable jury could conclude that Cashion's actions constituted an "extreme" violent sexual assault based on his contact with her vaginal area. Therefore, the totality of the circumstances surrounding this single incident creates a triable issue as to whether Cashion's actions were sufficient to create a hostile work environment. *Id*. at 395-396.

Nevertheless, plaintiff's claim fails because plaintiff cannot demonstrate respondeat superior liability. Plaintiff contends that respondeat superior applies given Cashion's position as a shift lieutenant. Plaintiff relies upon *Weberg v Michigan*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2001 (Docket No. 217671). But *Weberg* is not binding because it is unpublished. MCR 7.215(C)(1). And, in any event, *Weberg* is distinguishable as the individual defendant in that case, a prison warden, was described as the plaintiff's employer because he had the ability to control the plaintiff's working conditions, to discipline the plaintiff, and to investigate the plaintiff. *Weberg*, unpub op at 4. In this case, Cashion lacked the ability to investigate and discipline plaintiff, and he was not plaintiff's employer; rather, the city was. Accordingly, there is no respondeat superior liability on this basis. *Radtke*, 442 Mich at 397 ("[I]f an *employer* is accused of sexual harassment, then the respondeat superior inquiry is unnecessary because holding an employer liable for personal actions is not unfair.").

Furthermore, "[u]nder the Michigan Civil Rights Act, an employer may avoid liability if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Radtke*, 442 Mich at 396. As discussed above, while plaintiff informed the Internal Affairs' investigators that Cashion touched her arm and leg/thigh, she admitted that she did not inform them that Cashion touched her vaginal area or sexually assaulted her. She only described the incident as such in the documents provided after the litigation commenced. Therefore, the city could not have taken any remedial action based on the single

-6-

extreme incident that arguably caused the hostile work environment because it had no notice of the specific sexual nature of Cashion's conduct during its investigation. Accordingly, we conclude that the trial court properly dismissed plaintiff's sexual harassment claim under the ELCRA.

Affirmed.

/s/ Anica Letica
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher